(No. 57989.—

HOUSING AUTHORITY FOR LA SALLE COUNTY, Appellant, v. YOUNG MEN'S CHRISTIAN ASSOCI-ATION OF OTTAWA *et al.*, Appellees.

*Opinion filed March 23, 1984.*

George Mueller, of Hoffman, Mueller & Creedon, of Ottawa, for appellant.

Paul V. Martin, of Lanuti, Martin & Lanuti, of Ottawa, for appellee.

JUSTICE SIMON delivered the opinion of the court:

The plaintiff, the Housing Authority for La Salle County, seeks an injunction against the defendant, the Young Men's Christian Association of Ottawa, prohibiting the construction of a parking lot, a portion of which would encroach on property that the housing authority claims it owns. The housing authority asked the court to

quiet title to the disputed parcel of real estate.

The issue here is whether this action is barred by a 1932 default judgment entered against Charles and Ella Deenis (jointly referred to herein as "Deenis"), the housing authority's predecessors in title, in United States v. Wirtz (N.D. Ill. Nov. 21, 1932), No. 40531, a condemnation action brought by the Federal government to acquire flood-plain easements over the disputed property as well as adjoining properties. The First Trust Company of Ottawa, the YMCA's predecessor in title, was joined as a codefendant in the Wirtz case. After the default by Deenis, the United States District Court for the Northern District of Illinois entered a judgment adjudicating First Trust to be the owner of the property which is the subject matter of this case and awarding First Trust compensation for the condemnation.

The circuit court of La Salle County granted summary judgment for the YMCA, holding that the judgment in Wirtz acts as a collateral estoppel with respect to the ownership of the disputed property. The appellate court affirmed (112 Ill. App. 3d 65) with one justice dissenting, and we allowed the housing authority's petition for leave to appeal (87 Ill. 2d R. 315). Affirming the judgments below, we hold that the judgment in Wirtz conclusively established that the YMCA's predecessor owned the disputed property as of the date of that judgment.

To determine the effect of the Wirtz judgment on the present litigation it is necessary to review the pleadings and judgment in that proceeding. The petition of the United States alleged that a plan for constructing a system of locks and dams on the Illinois River required the Federal government to acquire, by condemnation, easements and rights-of-way over numerous properties along the Fox River. The waterway project on the Illinois River would, it appeared, alter the course and elevation

of the Fox River and might result in flooding the properties which were the subject matter of the condemnation. The petition alleged that the Attorney General of the United States "has been unable to satisfactorily approve the title of the real estate [to be condemned], the same being in a confused state, and that there are many outstanding and adverse claims against the said described real estate." The petition sought a determination of who owned the lands to be flooded by the waterway project and how much they should be paid for the flood-plain easement.

The petition then named 70 individuals and corporations as defendants and briefly set out their claims to various parcels that were being condemned. The claims of First Trust (YMCA's predecessor) and Deenis (the housing authority's predecessor) were set out in a portion of the petition describing unresolved claims to a parcel along the Fox River in Ottawa and referred to as tracts 0-20 to 0-25 in the petition. The land in dispute in this case was a portion of those tracts. In particular the petition alleged:

"That The First Trust Company of Ottawa, Illinois claims the legal title to a part of real estate designated as Tract No. 0-20 to 0-25, under a Warranty Deed from May E. McDougall, a spinster, and Emma K. McDougall, dated December 17, 1926 and recorded December 20, 1926 in Book 626, Page 524, as Document No. 217744 in the Office of the Recorder of LaSalle County, Illinois;

That Ella E. Deenis, wife of Charles G. Deenis, claims the legal title to a part of the real estate designated as Tract No. 0-20 to 0-25, under a Warranty Deed from Charles G. Deenis dated December 24, 1918 and recorded March 13, 1919 in Book 568, Page 37, as Document No. 150901, recorded in the office aforesaid;

That said part of the real estate claimed by Ella A. Deenis is subject to the inchoate dower or statutory interest of Charles G. Deenis, as fixed by the provisions of

Paragraph 1, Chapter 41, of Callaghan's Illinois Statutes Annotated, 1924 Edition;

That the property claimed by The First Trust Company of Ottawa, Illinois and Ella A. Deenis is encumbered by a lien for the general taxes for the year 1931."

When Deenis failed to appear, after being served with summons, the United States district court entered a default judgment against them stating that the "petition *** is hereby taken as confessed against the defendants *** insofar as they have any claim or interest in the property *** designated as 'Tracts Nos. 0-20 to 0-25' [in the petition]." On the same day that the default judgment was entered, a judgment was also entered finding that First Trust was seized with the fee simple title to real estate, followed by a legal description which the district court referred to as being a part of the real estate designated as "tracts nos. 0-20 to 0-25." The record contains the affidavit of a registered land surveyor stating that all of the land in the instant dispute is covered by the legal description contained in the judgment in the Wirtz case. The judgment awarded First Trust $650 as compensation for condemnation of the flood-plain easement over the land covered by the legal description set forth.

A prior judgment may have preclusive effects in a subsequent action under both *res judicata* and collateral estoppel. The doctrine of *res judicata* provides that "a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action." (Emphasis added.) (*People v. Kidd* (1947), 398 Ill. 405, 408.) When *res judicata* is established "as a bar against the prosecution of a second action between the same parties upon the same claim or demand *** it is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to

any other matter which might have been offered for that purpose. [Citations.]" *Barry v. Commonwealth Edison Co.* (1940), 374 Ill. 473, 478.

The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. (See *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7.) The adjudication of the fact or question "in the first cause will, if properly presented, be conclusive of the same question in the later suit" (*Hoffman v. Hoffman* (1928), 330 Ill. 413, 417), but "the judgment in the first suit operates as an estoppel only as to the point or question *actually litigated* and determined and not as to other matters which might have been litigated and determined." (Emphasis added.) *Charles E. Harding Co. v. Harding* (1933), 352 Ill. 417, 427; see also *Grip-Pak, Inc. v. Illinois Tool Works, Inc.* (7th Cir. 1982), 694 F.2d 466, 469, *cert. denied* (1983), 461 U.S. 958, 77 L. Ed. 2d 1317, 103 S. Ct. 2430.

Both parties have presented the issue in this case as one of collateral estoppel. They characterize the claim in the 1932 Wirtz action as one to condemn an easement, while the claim in the present action is one to quiet title. We do not agree with the parties' characterization of the claim involved in the Wirtz litigation, and we believe that the appropriate preclusion doctrine to apply in this case, notwithstanding the positions the parties have taken, is *res judicata* rather than collateral estoppel.

In condemnation actions brought by the Federal government, United States district courts have jurisdiction to settle conflicting claims to the title of land which is affected by or the subject of the condemnation. (See, *e.g.*, *United States v. 88.28 Acres of Land* (7th Cir. 1979), 608

F.2d 708, 714; *United States v. 22,680 Acres of Land* (5th Cir. 1971), 438 F.2d 75, 77; *United States v. Atomic Fuel Coal Co.* (4th Cir. 1967), 383 F.2d 1, 3.) "Indeed, it is the duty of the district court in distributing the condemnation fund to ascertain who is entitled to participate therein. There can be no just compensation, as the Constitution requires, if the fund is dispersed to the wrong persons." (*Bullen v. De Bretteville* (9th Cir. 1956), 239 F.2d 824, 830, *cert. denied* (1957), 353 U.S. 947, 1 L. Ed. 2d 856, 77 S. Ct. 825.) Thus, the court's power in a condemnation proceeding to fix compensation and apportion it among the claimants "necessarily includes the power to determine who among competing claimants owns the condemned land." *United States v. 1,629.6 Acres of Land* (3d Cir. 1974), 503 F.2d 764, 766.

When unable to confirm title to a parcel that it seeks to condemn, the Federal government has an interest in resolving the conflicting claims on the parcel in the condemnation action. Only in this way can the government be sufficiently assured that it will not be subjected to future claims for compensation by holders of valid title. Thus, in most condemnation proceedings the government joins as defendants all competing claimants to the condemned property so that they may be required to litigate their conflicting claims to the property.

In the contest between competing claimants, however, the government is a nominal party without any substantial interest in who establishes that he has title to the property. The competing claimants in a condemnation action actually are engaged in a quasi-interpleader action where the government summons the parties into the United States district court and compels them to litigate their claims to title in the property. *Cf. United States v. 350.925 Acres of Land* (5th Cir. 1979), 588 F.2d 430, 431 ("[a]n eminent domain proceeding to determine who has title to the property is properly treated as a proceeding in the nature of inter-

pleader").

A decree operates as *res judicata* of the claim presented in a later action when the facts and relief sought in both actions "are substantially the same." (*Midlinsky v. Rubin* (1930), 341 Ill. 378, 385.) Because the "claim" involved in Wirtz was of the nature described above, it was actually the very same quiet title claim that the housing authority purports to litigate in the present case. Both cases involved the claim of title to the disputed property, and the object of each case was to ascertain the true owner of the property.

The condemnation action in Wirtz required the Federal government to call both Deenis and First Trust into the United States district court to litigate their respective claims to the fee interest in the land. Both Deenis and First Trust received proper service of the complaint. When Deenis defaulted and the court entered a judgment finding First Trust to be the fee owner of the property, the title dispute was resolved and the doctrine of *res judicata* applied to bar any relitigation of that claim.

Although the judgment against Deenis was by default, it is entitled to the same preclusive effect under the doctrine of *res judicata* as any other judgment. Some courts have held that default judgments have limited preclusive effects under the doctrine of collateral estoppel. (See *Grip-Pak, Inc. v. Illinois Tool Works, Inc.* (7th Cir. 1982), 694 F.2d 466, 469, *cert. denied* (1983), 461 U.S. 958, 77 L. Ed. 2d 1317, 103 S. Ct. 2430 ("a default judgment is not a proper basis for collateral estoppel"); *In re McMillan* (3d Cir. 1978), 579 F.2d 289, 292-93; Restatement (Second) of Judgments sec. 27, comment *e* (1982); see also *Collateral Estoppel in Default Judgments: The Case For Abolition*, 70 Columb. L. Rev. 522 (1970); 1B J. Moore, Moore's Federal Practice sec. 0.444[2], at 798 (2d ed. 1983).) However, default judgments are always *res judicata* on the ultimate claim or demand presented in the complaint.

The housing authority asks us to recognize unique circumstances in this case that it claims would support relaxing the ordinary application of a preclusion doctrine. *Adams v. Pearson* (1952), 411 Ill. 431, is the principal case they have cited for this proposition, but even there this court recognized that the "peculiar facts" in that case under "which both parties would be barred by ordinary application of the rules of *res judicata* with an unsatisfactory and perhaps inequitable result, present a unique and nonrecurrent situation." (411 Ill. 431, 442.) The equities here are not as compelling as those this court relied on in *Adams v. Pearson*.

The housing authority argues that Deenis lacked sufficient incentive to litigate the issue of title in the condemnation proceeding and, therefore, it is inequitable to accord the judgment in that proceeding preclusive effect as having determined the ownership of the disputed parcel. This argument is unpersuasive. Under special circumstances, the absence of an incentive to litigate might be relevant in the application of collateral estoppel (Restatement (Second) of Judgments sec. 28(5)(c) (1982)), but no authority suggests that it is relevant when the doctrine to be applied is *res judicata*.

In any event, Deenis had sufficient incentive to litigate the claim of title in the condemnation proceeding. By receipt of the petition in Wirtz they were on notice that one of the purposes of that action was to determine who had title to the condemned property; the petition described the condition of that title as "being in a confused state [with] many outstanding and adverse claims ***." The petition also set forth the adverse claim of First Trust just before the claim of Deenis and stated "[t]hat the property claimed by the First Trust Company of Ottawa, Illinois *and* Ella A. Deenis is encumbered by a lien for the general taxes for the year 1931." (Emphasis added.) The juxtaposition of the claims and the language concerning the tax lien were suf-

ficient to indicate to Deenis that their property was subject to an adverse claim that would be litigated in the condemnation proceeding. The facts related in the petition created enough incentive and warning for anyone who believed he had a fee interest and desired to retain it to appear in the litigation and establish his ownership rather than abdicating any claim of ownership by failing to appear and enter the contest.

If anything, the equities in this case support us in upholding the title recognized in Wirtz. The judgment in that case was recorded in the public record over half a century ago and has been available for inspection by all subsequent purchasers of the property. "Where questions arise which affect [ownership of] titles to land it is of great importance to the public that when they are once decided they should no longer be considered open." *Minnesota Co. v. National Co.* (1866), 70 U.S. (3 Wall.) 332, 334, 18 L. Ed. 42, 43; see also *United States v. Title Insurance & Trust Co.* (1924), 265 U.S. 472, 486, 68 L. Ed. 1110, 1114, 44 S. Ct. 621, 623.

For these reasons, we hold that the judgment in United States v. Wirtz is *res judicata* and bars any claim that the housing authority or its predecessors had to ownership of the disputed parcel prior to the date of that judgment.

*Judgment affirmed.*