THOMAS BENEDICK, Plaintiff-Appellee, v. DEBRA MOHR, Defendant-Appellant.

Fifth District   No. 5—91—0516

Opinion filed August 28, 1992.—Rehearing denied October 14, 1992.

John P. Turner, of Belleville, for appellant.

Thomas Benedick, of O'Fallon, appellee *pro se.*

JUSTICE WILLIAM A. LEWIS delivered the opinion of the court:

Defendant appeals from a summary judgment entered against her for damages in the sum of $26,583.10. Defendant does not contest her liability to plaintiff, her ex-employer, for her theft, but she does contest the damages or the amount of her theft.

Defendant was charged in St. Clair County on March 8, 1990, in a criminal case, People v. Mohr, case No. 90—CF—275, with felony theft of more than $10,000 in violation of section 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)). The victim in the criminal case and plaintiff in this cause filed this civil suit on April 10, 1990, seeking damages for $26,983.10. Defendant pleaded guilty to the criminal charge on July 16, 1990, and the trial judge set a sentencing hearing for September 6, 1990.

When the proceedings of July 16, 1990, commenced, the trial judge, before he accepted the negotiated plea, was apprised by the assistant State's Attorney that he needed to set a "restitution hearing to determine the exact amount of restitution owed. It's a considerable sum and there's a disagreement how much it is." Defendant's counsel informed the judge of the pending civil case and told the judge that the State was going to ask that the specific amount owed by defendant be determined in a restitution hearing. The trial judge ordered a presentence report and stated that such report include "a thorough check on the restitutionary matter." An order accepting defendant's plea of guilty, ordering a presentence report and setting a sentencing hearing with restitution to be determined on September 6, 1990, was filed on July 16, 1990.

On September 6, 1990, defendant's counsel advised the court that the State was going to recommend probation, but that there was a disagreement as to the amount of restitution. Defendant's counsel further advised the court that the victim had filed a civil suit against the defendant and further stated: "[defendant's private counsel in the civil suit] is here on the restitution issue. I think this court first has to get past the threshold figure, whether this court is going to order the restitution, have a full hearing on the restitution, or whether this court is going to leave it to the civil case."

Apparently the parties agreed to shorten the hearing after a brief recess, because defense counsel told the court: "[m]y understanding, there will be an inquiry made of my client as to her ability to make

any restitution and then in writing the victims will submit to the court, either through their accountant or on their own, what they claim the loss would be." The trial judge stated after accepting the presentence report: "Its [sic] my understanding that there's going to be supplemental testimony and argument submitted by way of writing, however, that you wish to take testimony at this time; is that correct[?]" Defendant then testified as to her assets, and she also was asked about the money she had embezzled. The trial judge asked, after defendant testified as to her assets, liabilities and ability to pay restitution, if there was "[a]ny additional testimony other than the supplementation by writings." Defense counsel replied, "[n]one from the defendant, your Honor." The assistant State's Attorney then recommended probation and full restitution of $31,983.10 minus the $5,000 the defendant had already paid back. The trial judge gave counsel 14 days to submit "further supplementation on these proceedings."

The assistant State's Attorney filed a paper entitled "Restitution Evidence For Sentencing" on September 17, 1990, and sent a copy to defendant's counsel. This paper set out a recapitulation of the moneys defendant stole from plaintiff. On September 20, 1990, three sworn affidavits and exhibits, including numerous photocopies of checks, totaling 65 pages were filed, and these set forth in detail what monies defendant had embezzled from plaintiff. Defendant's counsel wrote a letter to the trial judge on September 27, 1990, denying defendant stole more than $18,000 and stating, "[t]he restitution evidence submitted by Assistant State's Attorney Pat Curran is strongly disputed." Defense counsel did not submit any counteraffidavits.

The trial court entered an order on October 26, 1990, finding that the restitution should be $31,876.17 less $5,000 that the defendant had already paid, leaving a balance of $26,876.17. On December 6, 1990, after the 30 days to appeal expired in the criminal case, plaintiff filed a motion for summary judgment in this case in the amount of $26,876.17. The motion for summary judgment was heard and granted (although the trial judge somehow came up with the figure of $26,583.10) "based upon Defendant's guilty plea in the felony case and the finding of the Court for restitution after a restitution hearing was held." Defendant's post-trial motion to reconsider was denied.

Defendant raises two issues on appeal. The first is whether the trial court erred in applying the doctrine of collateral estoppel or issue preclusion against defendant by holding that the finding and judgment as to restitution in the criminal case precluded defendant from challenging it in the subsequent civil suit. The second issue, which re-

lates to the first issue, is whether the trial judge erred in granting a summary judgment against defendant as to the damages suffered by plaintiff.

■ We are treating this case as one involving a question of the doctrine of collateral estoppel as opposed to the doctrine of *res judicata*, since both parties argued the issue of collateral estoppel and avoided the possibility that the doctrine of *res judicata* may have been the correct applicable doctrine.

> "The doctrine of *res judicata* provides that 'a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand or cause of action.' (Emphasis added.) [Citation.] ***
>
> The doctrine of collateral estoppel applies when a party or someone in privity with a party participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." (Emphasis in original.) (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52, 461 N.E.2d 959, 962.)

The policy of both doctrines is "to promote judicial economy and prevent repetitive litigation." *Stratemeyer v. West* (1985), 136 Ill. App. 3d 1095, 1097, 484 N.E.2d 399, 400.

■ Defendant's counsel pieced together requirements from several cases to arrive at the necessity of six factors being present before the doctrine of issue preclusion can apply. We adopt these factors with some modification, namely:

> (1) The parties or their privies must have been involved in both cases;
>
> (2) Some controlling fact or material question must be identical in both cases;
>
> (3) The party sought to be precluded must have had a full and fair opportunity to litigate the issue in the first cause;
>
> (4) The controlling issue or material fact must have been actually litigated or decided in the prior action (we use the words "or decided" guardedly to cover some situations where a party is held to have waived his right to litigate by his default and a judgment is entered) (see *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959);

(5) An injustice must not be done to the party estopped under the circumstances of the later case;

(6) The prior action must have been litigated in a court of competent jurisdiction (see *People v. Moore* (1990), 138 Ill. 2d 162, 561 N.E.2d 648 (where the supreme court declined to give preclusive effect to a finding of no probable cause in the statutory summary suspension hearing in the subsequent DUI case as it would thwart the legislative purpose of providing a swift administrative type of hearing)); and

(7) The prior judgment must be final.

See *Stone v. Salvage & Bridges Agency, Inc.* (1990), 206 Ill. App. 3d 615, 565 N.E.2d 318; *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959; *Buttitta v. Newell* (1988), 176 Ill. App. 3d 880, 531 N.E.2d 957; *Stratemeyer v. West* (1985), 136 Ill. App. 3d 1095, 484 N.E.2d 399.

Defendant admits that factors (1), (6) and (7) are present but contends that factors (2), (3), (4) and (5) have not been met.

As to factor (2), defendant argues that restitution was not a material issue in the criminal case. It is true that the exact amount of money that was embezzled was not a material issue or an element of the offense charged, as long as it was shown that more than $10,000 was stolen. Ill. Rev. Stat. 1989, ch. 38, par. 16—1.

Defendant cites *Appley v. West* (7th Cir. 1987), 832 F.2d 1021, as being "on all fours" with this case. In *Appley*, the plaintiff claimed that defendant had embezzled $975,000 from her and her mother. Defendant admitted to having embezzled $495,000, but he denied taking $975,000. The parties agreed that the government could submit its version of the offense. The trial judge ordered $975,000 in restitution based on the government's version of the offense. In the subsequent civil suit the trial judge entered a summary judgment in favor of plaintiff for triple damages of $2,871,000 for a civil violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§1962(b), (c), 1964(c) (1988). The United States Court of Appeals, Seventh Circuit, held that the summary judgment based on the collateral estoppel would work an injustice on defendant, because "there was little incentive to litigate the issue aggressively at the sentencing hearing" and "there was no litigation of the amount of restitution." *Appley*, 832 F.2d at 1026.

If the *Appley* court had stopped with the aforesaid reasons, there would not be any disagreement with its ruling, although it could be strongly argued that the defendant should have been estopped since he chose not to contest the amount of restitution after being given

the opportunity to do so. The court, however, went on to say that one of its reasons for refusing to apply the doctrine of collateral estoppel was that "the amount of restitution was not a material fact of the indictment on which the guilty plea was based." (832 F.2d at 1026.) The court neither raised nor discussed the possibility of collateral estoppel if there had been a sentencing hearing in which the issue of restitution had been aggressively litigated. We have no problem with the holding that the plea of guilty to an indictment charging embezzlement of $575,000 was not an admission of embezzlement of $957,000 and in that sense the amount of restitution was not a material fact. If, however, the court meant that the only material issues in a criminal prosecution are the allegations in the indictment, information or complaint, then we respectfully disagree with the *Appley* court.

█ A criminal proceeding does not end with the determination of guilt. The Unified Code of Corrections provides for a sentencing hearing in which other issues arise that are material to the punishment that is to be imposed. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—4—1.) There is also a specific section that pertains to the issue of restitution. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6.) If the *Appley* ruling were such that collateral estoppel or issue preclusion were limited solely to the allegations in the indictment, information or complaint, then the doctrine's "laudable purpose of preventing the repeated litigation of the same factual issue" would be severely limited. *People v. Hooker* (1981), 96 Ill. App. 3d 127, 130, 421 N.E.2d 301, 303-04.

█ █ For collateral estoppel to apply, the material issue or controlling fact that is identical in both cases is not limited to the main issue or issues of guilt or liability. (See *People v. Hooker* (1981), 96 Ill. App. 3d 127, 421 N.E.2d 301 (for collateral estoppel in a motion to suppress identification); *People v. Williams* (1975), 59 Ill. 2d 557, 322 N.E.2d 461 (for collateral estoppel in a motion to suppress statements).) It is not necessary that the material issues be contained in the issue instructions of the Illinois Pattern Jury Instructions. The material issue must, however, be of such importance that it goes to the merits and forms a substantive part of the matter that is being litigated in a hearing before the court. "To operate as an estoppel by verdict it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case." (*Hoffman v. Hoffman* (1928), 330 Ill. 413, 418, 161 N.E. 723, 726.) It should go without saying that the amount of restitution goes to the merits and forms a substantive part of the issue to be determined in a restitution hearing under the Unified Code of Cor-

rections. The amount of damages suffered by the victim in the present case includes the same issue of monetary loss that was determined in the restitution hearing. The court is being asked in both cases to specifically find how much defendant stole from her employer. This is the material issue that is identical and controlling in both cases, and any finding in the present case different to the finding in the restitution case would result in inconsistent judgments.

■ Defendant next argues that section 5—5—6(j) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—6(j)), which states, "[n]othing contained in this Section shall preclude the right of any party to proceed in a civil action to recover for any damages incurred due to the criminal misconduct of the defendant," causes one to conclude "that the question of restitution is never material in a criminal case." We do not see how section 5—5—6 makes restitution immaterial in a criminal case. The clear and plain meaning of the statute is to protect the victim, not the wrongdoer. There are many reasons why the legislature protected the victim with this clause. Suffice it to say that the victim's interest may not be fully protected or represented in the restitution hearing, since the victim is not a party to the prosecution, and the victim in many cases could not recover the full amount of his damages, since the victim cannot recover for pain and suffering, mental distress, punitive damages, etc. We cannot discern any indication that the legislature desired to protect the criminal under section 5—5—6. If the legislature intended to do so, then it would have legislated something to the effect: "nothing contained in this Section shall preclude the right of a defendant to any defense in a civil action brought by any victim." The silence of the legislature leads us to believe otherwise.

■ Defendant next contends that she did not have a fair opportunity to litigate nor did she in fact litigate the propriety of restitution and the amount of restitution. We disagree. The record is replete with notices of the setting of the restitution hearing. In fact, defendant even had her private civil attorney present at the restitution hearing. The victim-plaintiff was present. Defendant even testified and admitted stealing at least $11,000. Defendant agreed through her counsel to allow the State to present its evidence by means of affidavits and exhibits rather than by testimony. Defendant made no effort to present counteraffidavits to the victim's affidavits or to request the trial court set another restitution hearing so that she could rebut the State's evidence. Finally, defendant did not file a motion to reconsider the amount of restitution, nor did she appeal the judgment.

The method used to litigate the propriety and the amount of restitution was not in strict compliance with the rules of evidence, but defendant only has herself to blame for agreeing to the supplementation of the record by affidavits and exhibits from plaintiff's witnesses. Many cases and issues are litigated by means of affidavits, depositions, stipulations as to facts, and admissions in the pleadings. There is nothing inherently unjust, and there is no deprivation of constitutional rights, in litigating issues by these means as long as the parties freely and voluntarily agree to such method of litigation.

We see no reason to force plaintiff to go through the expense of a trial so that defendant can attempt to obtain an inconsistent judgment from another trier of fact or to escape her obligation to reimburse plaintiff fully for the money she has stolen. Defendant has had her day in court and she is precluded from relitigating the same factual issue over and over. We, therefore, affirm the trial court.

Affirmed.

WELCH and HARRISON, JJ., concur.