819 A.2d 1117

In re DELRIC H.

No. 2027, Sept. Term, 2001.

Court of Special Appeals of Maryland.

March 27, 2003.

Mark Colvin, Assistant Public Defender (Stephen E. Harris,. Public Defender on the brief for appellant, Delric H.), Baltimore, Neil I. Jacobs of Rockville, on the brief for appellant, Albree Bell.

Celia Anderson Davis, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Douglas Gansler, State's Attorney for Montgomery County of Rockville, on the brief), for appellee.

Argued before KENNEY, DEBORAH S. EYLER, and SHARER, JJ.

SHARER, Judge.

Appellant, Delric H., appeals from an order of the Circuit Court for Montgomery County requiring him, and his mother,[1] to pay restitution after he was adjudicated a delinquent child. In the adjudicatory hearing, Delric admitted to having committed a second degree assault on another juvenile.

At the restitution hearing (held separately from both the adjudicatory and disposition hearings), appellant challenged, on hearsay and authentication grounds, the introduction of eleven exhibits, all of which were related to medical or dental services provided to the victim. The court admitted ten of the eleven exhibits on the basis that Title 5 of the Maryland Rules (i.e., the Maryland Rules of Evidence) is inapplicable in a parental/juvenile restitution hearing and, in the alternative, that strict application of the rules of evidence is not required in a juvenile restitution hearing.

Appellant raises two questions for our review. We have rephrased the second question for simplicity, but have left appellant's first question intact.

1. Did the juvenile court err, at the restitution hearing, by admitting evidence that does not satisfy the requirements of Title 5 of the Maryland Rules?

2. Did the juvenile court abuse its discretion in ordering restitution?

We answer both questions in the negative, and affirm the ruling of the juvenile court.

---

1. Delric and his mother, Albree B., were disparate parties in the restitution phase of the juvenile proceeding. Each was represented by separate counsel, as they are in this appeal. Ms. Bell has not filed a brief, but has adopted the statement of facts and argument set out in Delric's brief.

## FACTUAL and PROCEDURAL HISTORY

On February 8, 2001, Delric H.[2] committed a second degree assault on a fellow student. Delric "chased the victim, punched him in his face, then picked up the victim and body slammed him." As a result, "[t]he victim fell, face first on the sidewalk, injuring his mouth and nose . . . chipp[ing] two teeth and one tooth was smashed. . . ."

In due course, an appropriate petition was filed alleging Delric to be a delinquent child and, on July 6, 2001, the juvenile court held an adjudicatory hearing and a disposition hearing immediately thereafter. At this time, the court adjudicated Delric a delinquent child and placed him on supervised probation.

Several months later, on October 2, 2001, the court convened a restitution hearing. That hearing was recessed and then resumed and concluded on October 19, 2001. During the hearing, the State presented evidence, through the testimony of the minor victim's father, detailing the hospital visit on the day of the assault, and the charges for medical and dental care that resulted. According to the father's testimony, the victim was transported by ambulance to Montgomery County General Hospital. As a result of the assault, and the resulting facial and dental injuries, doctors and dentists removed four of the victim's teeth.

The State sought to introduce eleven exhibits to prove that the medical and dental expenses were necessitated by the assault, and to establish the appropriate amount of restitution. The eleven exhibits included copies of bills for medical services and treatment and medication, all of which had been paid by the victim's father by check, credit card, or cash.[3] Counsel for

---

2. Delric's date of birth is November 22, 1988. Hence, he was 12 years of age at the time of the offense, and at the time of the various hearings which comprise this case.

3. Exhibits 1 through 8, and Exhibit 10, were copies of doctors' and dentists' bills. Exhibit 9 was a copy of a check written by the victim's

Delric made a timely objection to admission of the bills on the grounds that all of the exhibits constituted hearsay, and further, that they were not properly authenticated business records as required by Md. Rules 5–803(b)(6), 5–901, and 5–902.

Noting the objection, the juvenile court ruled that the Maryland Rules of Evidence do not apply in a restitution hearing, because Md. Rule 5–101(b)(9) excepts the application of the rules in a sentencing proceeding under Md. Rule 4–342. In reviewing Md. Rule 4–342(j) (2001),[4] titled "Restitution from a parent[,]" the court determined that the present restitution hearing fell within the purview of Rule 4–342; thus, he opined, the rules of evidence did not apply.

As an alternative, citing Md. Rules 5–101(b)(12) and 5–101(c)(8), the court declined to apply strict rules of evidence, finding that prior to adoption of the Maryland Rules of Evidence, common law rules of evidence had not applied to restitution hearings. The juvenile court judge stated, "I am going to decline to apply strict rules of evidence to these proceedings . . . at least in so far as these bills go."

Despite finding the rules of evidence inapplicable, or otherwise relaxed, the court reviewed each of the eleven exhibits under a "general reliability requirement," to determine if they passed "some kind of minimal, entry level smell test." [5] After

---

father to a dentist. Exhibit 11 was a pharmacy receipt for prescription medication.

4. Md. Rule 4–342(j) (2001), new in 2001, is now found at Md. Rule 4–342(k) (2003) without substantive change. Notwithstanding the source note for 4–342(k) (2003), which suggests *"Section* (k) is new," the only difference is, as discussed *infra,* the fact that Md. Ann.Code art. 27, § 807 (Repl.Vol.1996 & Supp.2000) is now found in Title 11 of the Criminal Procedure Article.

5. As discussed *infra,* a court may order restitution if the "victim suffered *actual* medical, dental, hospital, counseling, funeral, burial expenses, any other direct out-of-pocket losses, or loss of earnings as a *direct* result of the crime." Md. Ann.Code art. 27, § 807(a)(1)(ii) (Repl.Vol.1996 & Supp.2000) (emphasis added). Therefore, a direct causal connection must exist between a juvenile's delinquent act, and

his review, the court "found them all to pass muster, except number nine."[6] Accordingly, State's Exhibits 1 through 8, 10, and 11 were admitted into evidence. The ten bills totaled $6,693.89.

## STANDARD of REVIEW

Given the two questions presented by appellant, we face two different standards of review. In reviewing whether the court properly determined that the Maryland Rules of Evidence do not apply, or are otherwise relaxed, in a restitution hearing, we must determine if the court's legal conclusions were legally correct. *Gregg Neck Yacht Club, Inc. v. County Commr's of Kent County,* 137 Md.App. 732, 752, 769 A.2d 982 (2001) (citations omitted). Then, we shall review the trial court's order, requiring Delric and his mother to pay restitution, under an abuse of discretion standard. *In re Lorne S.,* 123 Md.App. 672, 680, 720 A.2d 920 (1998) (citing *In re Don Mc.,* 344 Md. 194, 200–01, 686 A.2d 269 (1996)).

## DISCUSSION

*1. Did the juvenile court err at the restitution hearing, by admitting evidence that does not satisfy the requirements of Title 5 of the Maryland Rules?*

### I.

Whether the Maryland Rules of Evidence (Md. Rule 5–101 *et seq.*) apply in a parental/juvenile restitution hearing is, we conclude, a question of first impression.

Here, as we have noted, the juvenile court ruled that Md. Rule 5–101(b)(9) excepts the rules of evidence from

the actual expenses suffered by the victim. *See In re Levon A.,* 361 Md. 626, 639–41, 762 A.2d 572 (2000). The juvenile court appropriately ruled that the State carried "the burden of proving necessary elements of . . . [art. 27, § ] 807" and that the exhibits had to "pass some muster, in terms of reliability, in connection with the event."

**6.** State's exhibit 9 was a copy of a check written by the victim's father to a dentist. It was not corroborated by a statement or receipt.

application in a sentencing proceeding under Md. Rule 4–342, and that the present case was a restitution hearing under Rule 4–342(j). Although we agree with the juvenile court's ultimate result, we disagree with the conclusion as to the applicability of Md. Rule 4–342(j), because that rule applies to restitution hearings in criminal proceedings, but not in juvenile delinquency proceedings.[7] That interpretation was made clear in *In re Victor B.*, 336 Md. 85, 646 A.2d 1012 (1994), wherein the Court of Appeals said:

> We find that neither the Maryland Rules nor the Juvenile Causes Act provides for the application of the criminal rules of Title 4 to juvenile proceedings. Furthermore, we find no implied incorporation of the criminal rules into the juvenile rules.
>
> * * *
>
> We hold that title 4 of the Maryland Rules, which governs procedure in criminal cases, is not applicable to juvenile proceedings.

*Id.* at 96, 646 A.2d 1012; *cf. In re John M.*, 129 Md.App. 165, 189, 741 A.2d 503 (1999) ("Although juvenile proceedings are civil in nature, they are governed by the rules of procedure contained in Chapter 11 of the Maryland Rules.").

As an alternative ground, citing Md. Rules 5–101(b)(12) and 5–101(c)(8), the court declined to strictly apply rules of evidence, based on its conclusion that common law rules of evidence had not applied to restitution hearings prior to the adoption of the Maryland Rules of Evidence. We note that an oft-accepted practice was to waive or relax evidentiary rules in restitution hearings before (and after) the formal adoption of Title 5 of the Maryland Rules on July 1, 1994. Nonetheless, we hesitate to conclude that restitution courts were never

---

7. Notwithstanding our disagreement with the rationale for the ruling, we may affirm. *Hurt v. Chavis*, 128 Md.App. 626, 640, 739 A.2d 924 (1999) (explaining that we may " 'affirm the trial court if it reached the right result for the wrong reasons.' " *Id.* (quoting *Pope v. Board of Sch. Comm'rs of Baltimore City*, 106 Md.App. 578, 665 A.2d 713 (1995), *cert. denied*, 342 Md. 116, 673 A.2d 707 (1996))).

bound by the laws of evidence prior to the adoption of the Maryland Rules. Our language in *In re Appeal No. 769,* 25 Md.App. 565, 335 A.2d 204 (1975), suggests that, at least at one time, rules of evidence did apply in restitution hearings. *Id.* at 571, 335 A.2d 204 ("The rules of evidence applicable to civil cases shall apply at [parental restitution] hearings. Rule 912, § c."); [8] *see also In re Johnson,* 254 Md. 517, 524, 255 A.2d 419 (1969)("While [juvenile] proceedings are informal, § 60, the rules of practice, of procedure, of evidence, and standards of fairness must be observed.") (citations omitted), *appeal dismissed,* 403 U.S. 926, 91 S.Ct. 2257, 29 L.Ed.2d 706 (1971).

## II.

■ In Maryland, a "court may enter a judgment of restitution against the parent of a child, the child, or both as provided under Article 27, § 807 of the Code." Md.Code Ann., Cts. & Jud. Proc. § 3–829 (Repl.Vol.1998).[9] Article 27 § 807(a)(1), in turn, outlines the factors that a court will review in determining whether to require the juvenile or parent to pay restitution to a victim. Md. Ann.Code art. 27, § 8–207 (Repl.Vol.1996 & Supp.2000).[10] We draw special attention to the fact that a § 807 parental/juvenile restitution

---

**8.** At the resumption of the restitution hearing on October 19, 2001, after reviewing the decision in *In re Appeal No. 769,* the court acknowledged that "review of this case probably makes the applicability of section 12 and section 8, under 5–101, less, on firm ground than I thought that it was on October 2nd."

**9.** This section may now be found, without substantive change, at Md.Code Ann., Cts. & Jud. Proc. § 3–8A–28 (Repl.Vol.2002). As explained *infra,* we apply the law in effect on the date of the delinquent act (February 8, 2001).

**10.** Md. Ann.Code art. 27, § 807(a) reads in pertinent part:

(a) *Restitution upon conviction, acceptance of plea of nolo contendere, etc.; priority of payment; reasons for not ordering restitution.*—(1) A court may issue a judgment of restitution directing a defendant to

hearing "may be held as part of the sentencing or disposition hearing." Md. Ann.Code art. 27, § 807(a)(3)(iii).[11]

Notably, pursuant to Md. Rule 5–101(c)(6), a court may decline to require strict application of the rules in "[Juvenile] Disposition hearings under Rule 11 115." [12]

█ We believe it logical to conclude from relevant provisions of the Maryland Code and Maryland Rules that a strict

---

make restitution in addition to any other penalty for the commission of a crime, if:

\* \* \*

(ii) The victim suffered actual medical, dental, hospital, counseling, funeral, burial expenses, any other direct out-of-pocket losses, or loss of earnings as a direct result of the crime;

\* \* \*

(3)(i) Notwithstanding any other provision of law, if the defendant is a child, the court may order the child, the child's parent, or both to pay restitution to a victim.

(ii) As an absolute limit against one child, the child's parent, or both, a judgment of restitution issued under this section may not exceed $10,000 for all acts arising out of a single incident.

(iii) A court may not enter a judgment of restitution against a parent under this section unless the parent has been afforded a reasonable opportunity to be heard and to present appropriate evidence on the parent's behalf. *A hearing under this section may be held as part of the sentencing or disposition hearing.*

(Emphasis added). This portion of the Maryland Code was repealed by the Acts of 2001, ch. 10, § 2 (effective October 1, 2001) and now is found in Title 11 Subtitle 6 of the Criminal Procedure Article. Current Crim. Proc. Article § 11–603 lays out the necessary conditions for a judgment of restitution. *See* Md.Code Ann., Crim. Proc. § 11–603 (2001). Although current Crim. Proc. § 11–603 took effect a day before the October 2, 2001, restitution hearing, we apply the restitution statute in effect on the date of the delinquent act. *In re Levon A.*, 361 Md. 626, 637 n. 2, 762 A.2d 572 (2000). The General Assembly has repeatedly amended and re-codified sections of the code dealing with restitution hearings over the past ten years. *See generally In re John M., supra,* 129 Md.App. 165, 173 n. 2, 741 A.2d 503 (1999).

11. Current Md.Code Ann., Crim. Proc. § 11–604(c)(2) (2001), was derived without substantive change from art. 27, § 807(a)(3), and similarly states, "[a] hearing under this subsection may be held as part of the sentencing or disposition hearing."

12. By way of comparison, under Md. Rule 5–101(b)(9), the rules of evidence are inapplicable in "[s]entencing [proceedings] in non-capital cases under Rule 4–342."

application of the rules is not necessary when a restitution hearing is held in conjunction with a disposition (or sentencing) hearing.[13] Our reasoning is further supported by Md. Rule 11–118 ("Juvenile Causes"), which states that a restitution hearing "may be conducted contemporaneously with a disposition hearing, if appropriate."[14] We further conclude that, regardless of whether the restitution hearing is held contemporaneously with a disposition hearing, a court may "decline to require strict application" of Title 5 of the Maryland Rules, to a parental/juvenile restitution hearing.[15] To interpret the applicability of the rules of evidence in a restitution hearing based solely on whether that hearing is held

---

**13.** Although the Rules Committee discussed Md. Rule 5–101 prior to its adoption, perhaps even communicating that the rules of evidence need not apply at a restitution hearing (because "these all usually take place within the disposition hearings"), they never definitively answered the question. Minutes from a Rules Committee meeting on June 18, 1993, read, in part, as follows:

The Chairman stated that Title 5 was generally not applicable in shelter care and detention hearings, and that it was relaxed in disposition hearings. The Reporter added that the statutes pertaining to juvenile matters provide that the Rules of Evidence are relaxed in waiver hearings.

Delegate Vallario questioned if restitution hearings would use the Title 5 Rules. The Chairman replied that these all usually take place within the disposition hearings, although they can be separate. Judge Johnson mentioned indigency hearings. The Chairman commented that the Subcommittee could look at the various proceedings which should be excluded from Title 5 applicability. Mr. Brault remarked that the policy behind the scope rules has been decided. The Chairman suggested that examples could be cited with a catchall at the end of the list. The Committee was in agreement with this. The Chairman stated that the Rule will be drafted reflecting the decisions made today and sent out to the Committee for comments before the Rules of Evidence go out.

**14.** *See also* JOSEPH F. MURPHY, JR., MARYLAND EVIDENCE HANDBOOK § 1513, at 584 (3d ed.1999).

**15.** As a matter of law, neither a disposition hearing nor a restitution hearing can be heard contemporaneously with an adjudicatory hearing. *See* Md. Rules 11–115 and 11–118. As such, the fact that the rules of evidence apply in juvenile adjudicatory hearings under Md. Rule 11–114 presents no problem. *See In re Michael G.*, 107 Md.App. 257, 265, 667 A.2d 956 (1995) ("[i]n general, the rules of evidence, including the rules regarding hearsay, apply in juvenile adjudicatory hearings.").

contemporaneously with, or separately from, a disposition hearing would be illogical and inconsistent.[16]

In 1975, the Maryland General Assembly enacted the Juvenile Causes Act (House Bill 483). 1975 Md. Laws 554. The new Act, among other things, amended the section dealing with adjudicatory hearings, and consolidated language dealing with a parent's liability from Title 3 Subtitle 8 of the Courts Article and separate statutory law for Montgomery County (Title 4 Subtitle 5 of the Courts Article).[17] *See* Alan M. Wilner, *Summary and Explanation of Proposed Juvenile Code*, Senate Judicial Proceedings, S.B. 291 (1975).

In response to the legislative change, the Court of Appeals, based upon a recommendation of the Standing Committee on Rules of Practice and Procedure ("the Rules Committee"), amended Chapter 900 of the Maryland Rules. *See* FORTY NINTH REPORT OF THE STANDING COMMITTEE ON RULES OF PRACTICE AND PROCEDURE (1975). As such, the 1975 version of Md. Rule 914 "Adjudicatory Hearing," no longer included language regarding the applicability of the rules of evidence. Also of note, the 1975 version of Md. Rule 919, titled "Parents' Liability—Hearing—Recording and Effect," like the current version of Md. Rule 11–118, provided that such a hearing could be "conducted as part of a hearing under Rule 915 (Disposition Hearing)." [18]

---

**16.** Moreover, the thrust of former Rule 912 dealt with the rules associated with "adjudicatory hearings, not with restitution hearings." The first mention of a parents' liability hearing was in Rule 919, which did not become effective until July 1, 1974. As *In re Michael G., supra,* points out, the rules of evidence do apply in juvenile adjudicatory hearings. 107 Md.App. at 265, 667 A.2d 956.

**17.** At that time, Montgomery County maintained a court for juvenile proceedings separate from the otherwise comprehensive state-wide juvenile court system.

**18.** For some reason, not evidenced in the history of the rules, Md. Rule 918 (1978) allowed for a parents' liability hearing to be held "contemporaneously with either an adjudicatory or disposition hearing." This language existed until 1997 when the Rules Committee deleted the language "either an adjudicatory or," to conform with the legislative changes of the 1997 Victim Rights' Act (1997 Md. Laws 311 & 312).

Appellant argues that *In re Appeal No. 769, supra,* 25 Md.App. 565, 335 A.2d 204, stands for the proposition that the Maryland Rules of Evidence apply in a parental/juvenile restitution hearing. Although we did state, in *dicta,* that the "rules of evidence applicable to civil cases shall apply at such hearings," our finding was based on then Md. Rule 912(c) (1974), titled "The Adjudicatory Hearing." *Id.* at 571, 335 A.2d 204. The 1974 version of Md. Rule 912(c) [19] provided:

> The rules of evidence applicable to criminal cases shall apply to delinquency hearings. The rules of evidence applicable to civil cases shall apply to all other hearings.

Md. Rule 912(c), however, no longer exists and its language has not survived. *See* Md. Rule 11–101 *et seq.*

As a result of the amendment to Chapter 900 of the Maryland Rules, there is no present counterpart to former Rule 912(c), nor has there been since the passage of the Juvenile Causes Act in 1975. Thus, the rationale supporting our finding in *In re Appeal No. 769* is no longer supportable, and appellant's argument is misplaced.

Additionally, we believe that the universally rejected application of the adversarial system to juvenile proceedings lends support to our conclusion that strict application of the rules of evidence is not required. Writing for the Court of Appeals in *In re Victor B., supra,* 336 Md. 85, 646 A.2d 1012, Judge Raker set out a concise and accurate history of the development of the juvenile justice system in the United States, with particular reference to the Maryland Juvenile Causes Act. *Id.* at 90–94, 646 A.2d 1012. "[T]he Juvenile Causes Act gives clear indication that juvenile proceedings are not criminal

---

*See* ONE HUNDRED THIRTY–NINTH REPORT OF THE STANDING COMMITTEE ON RULES OF PRACTICE AND PROCEDURE (1997).

**19.** Former Rule 912(c) is ambiguous in that it does not specify whether "all other hearings" refers to all other "juvenile hearings" or all other "adjudicatory hearings." In *Hazell v. State,* when interpreting Rule 912(c), we stated, "the rules of evidence applicable to civil cases shall apply in all other juvenile hearings." 12 Md.App. 144, 148, 277 A.2d 639 (1971).

matters and that they retain their 'special and informal nature.' " *Id.* at 92, 646 A.2d 1012 (citations omitted). Consistent with this view is the fact that "all hearings" under the Juvenile Causes Subtitle are to be conducted in an informal manner. Md.Code, Cts. & Jud. Proc. § 3–812(f)(1) (Repl.Vol. 1998 & Supp.2000) (now found at § 3–8A–13(f)(1)).[20] Applying the same rationale, we fail to see the merit in waiving strict application of the rules of evidence in a criminal restitution proceeding under Md. Rule 4–342(j) (2001) (*see* Md. Rule 5–101(b)(9)), but requiring strict application in a juvenile restitution proceeding.

Moreover, our decision is consistent with other states that have addressed whether evidentiary rules apply in restitution proceedings. Many states, including Alabama, Indiana, Kansas, New Mexico, South Carolina, South Dakota, Tennessee, Utah, Virginia, Washington, and Wisconsin, either completely dispense with, or relax, the rules of evidence in restitution hearings, often because the restitution hearing is held in conjunction with a sentencing or disposition hearing.[21] The

---

**20.** Section 6, ch. 415, Acts 2001, revised the Subtitle, such that Subtitle 8 applied to CINA proceedings, and redesignated Subtitle 8A covered "Juvenile Causes–Children Other Than CINAs and Adults."

**21.** *See Harris v. State,* 542 So.2d 1312, 1314 (Ala.Crim.App.1989), *cert. denied; Kotsopoulos v. State,* 654 N.E.2d 44, 46- 47 (Ind.Ct.App.1995), *reh'g and transfer denied; State v. Williams,* 777 P.2d 861 (Kan.Ct.App. 1989) (not designated for publication); *State v. Lack,* 98 N.M. 500, 650 P.2d 22, 30 (Ct.App.1982), *cert. denied,* 98 N.M. 478, 649 P.2d 1391 (1982); *State v. Gulledge,* 326 S.C. 220, 487 S.E.2d 590, 594 (1997) (withdrawn by publisher); *State v. Ruttman,* 598 N.W.2d 910, 911 (S.D.1999); *State v. McKinney,* 1994 WL 592042, *2–3, 1994 Tenn. Crim.App. LEXIS 723, *8–*9 (Tenn.Crim.App.1994); *State v. McBride,* 940 P.2d 539, 541–42 (Utah Ct.App.1997), *cert. denied,* 953 P.2d 449 (Utah 1997); *McCullough v. Commonwealth,* 38 Va.App. 811, 568 S.E.2d 449, 451 (2002); *State v. Pollard,* 66 Wash.App. 779, 834 P.2d 51, 53–54 (1992), *cert. denied,* 120 Wash.2d 1015, 844 P.2d 436 (1992); *State v. Madlock,* 230 Wis.2d 324, 602 N.W.2d 104, 110 (Ct.App.1999). A few states (Georgia, Illinois, Nebraska, and Vermont) apply formal rules of evidence to restitution hearings. *See Williams v. State,* 247 Ga.App. 783, 545 S.E.2d 343, 344–45 (2001); *Benedick v. Mohr,* 233 Ill.App.3d 903, 175 Ill.Dec. 440, 600 N.E.2d 63, 67 (1992), *cert. denied,* 148 Ill.2d 639, 183 Ill.Dec. 15, 610 N.E.2d 1259 (1993); *State v. Wells,*

Wisconsin restitution statute, for example, is similar in scope to Maryland law, but it also allows the court to "waive the rules of practice, procedure, pleading or evidence ..." in order to "do substantial justice between the parties...." *See* Wis. Stat. Ann. § 973.20 (2001); *State v. Madlock,* 230 Wis.2d 324, 602 N.W.2d 104, 110 (Ct.App.1999).

We are not concerned that our ruling will open the "flood gates" to a victim who would seek to introduce speculative or unsubstantiated evidence in support of an attempt to recover restitution to which there is no entitlement. First, our holding leaves the application or relaxation of the rules of evidence to the discretion of the trial judge. *See* Md. Rule 5–101(c).

Second, and more notably, a statutory safeguard is found in Article 27, § 807(a)(1)(ii) (now Crim. Proc. § 11–603(a)(2)), which requires a direct causal connection between a juvenile's delinquent act and the actual expenses suffered by the victim as a condition to an award of restitution. *See In re Levon A.,* 361 Md. 626, 639–41, 762 A.2d 572 (2000). Accordingly, the juvenile court judge or master must serve as a gatekeeper to ensure that each item of evidence presented shows that as a "direct result" of the delinquent's acts, the victim incurred "actual medical, dental, hospital, counseling, funeral, burial expenses, any other direct out-of-pocket losses or loss of earnings."

▮ Our review of the record before us reveals that the juvenile court did exactly what is required by statute, ruling that the State bore "the burden of proving necessary elements of ... [art. 27, § ] 807" and that the exhibits had to "pass some muster, in terms of reliability, in connection with the event." Indeed, after the trial court conducted a thorough analysis of each of the State's eleven exhibits, the judge ultimately found that Exhibit 9 was not sufficiently reliable without other corroborating evidence. Therefore, even though a court may decline to require a strict application of evidentia-

257 Neb. 332, 598 N.W.2d 30, 34–36 (1999); *State v. May,* 166 Vt. 41, 689 A.2d 1075, 1078 (1996).

ry rules, there still exists an inherent reliability/credibility requirement which a proponent of the offered evidence must satisfy.

■ We hold that a juvenile court has the discretion, in the interest of justice, to decline the strict application of the Maryland Rules of Evidence (§ 5–101 *et seq.*) in a restitution hearing.[22] Accordingly, we find no error.

### 2. Did the juvenile court abuse its discretion in ordering restitution?

■ In Maryland, juvenile courts have "broad discretion to order restitution, either against the juvenile himself, a parent, or both." *In re John M., supra,* 129 Md.App. at 174, 741 A.2d 503 (citing *In re Don Mc., supra,* 344 Md. at 201, 686 A.2d 269). Restitution under art. 27, § 807 serves several objectives, including: (1) rehabilitation of the defendant; (2) compensation of the victim; and (3) penalizing the transgressor. *See id.*[23] One purpose is to "compensate victims who

---

**22.** As an aside, we note that the burden of sufficiency and authentication for medical, dental, and other related bills are relaxed under Maryland law in certain situations. In juvenile restitution hearings, for example, "a written statement or bill for medical, dental, hospital, counseling, funeral, or burial expenses is legally sufficient evidence that a charge shown on the written statement or bill is evidence that a charge shown on the written statement or bill is a fair and reasonable charge for the services or material provided." Md.Code Ann., Crim. Proc. § 11–615 (2001) (formerly art. 27, § 808 (Supp.2000)). The party challenging the fairness and reasonableness of such a bill has the burden of proof. *Id.* § 11–615(b). Similarly, Md.Code Ann., Cts. & Jud. Proc. § 10–104(e) (Repl.Vol.2002) (applicable in district court cases, and qualifying circuit court cases), relaxes the admissibility of health care providers' bills, in that "[a] written statement or bill for health care expenses is admissible without the support of the testimony of a health care provider as the maker or the custodian of the statement or bill as evidence of the amount, fairness, and reasonableness of the charges for the services or materials provided." .

**23.** The objectives of restitution expounded in *In re John M., supra,* 129 Md.App. at 174, 741 A.2d 503, are supported by, and consistent with, the statutory language of the Juvenile Causes Subtitle under Md.Code Ann., Cts & Jud. Proc. § 3–802 (Repl.Vol.1998 & Supp.2000) (now found at § 3–8A–02 (Repl.Vol.2002)). Section 3–802, provides, in relevant part:

have been injured or who have suffered property loss as a result of the wrongful acts of a minor...." *Id.; see also In re Zephrin D.* 69 Md.App. 755, 761, 519 A.2d 806 (1987). "Restitution 'can "impress upon the [juvenile] the gravity of harm he has inflicted upon another[,]"[] and "provide an opportunity for him to make amends."'" *Id.* (quoting *In re Levon A.,* 124 Md.App. 103, 132, 720 A.2d 1232 (1998) (in turn quoting *In re Herbert B.,* 303 Md. 419, 427, 494 A.2d 680 (1985)), *rev'd on other grounds,* 361 Md. 626, 762 A.2d 572 (2000)). As such, compensation of the victim is an important factor to consider in the overall goal of rehabilitating the juvenile respondent. *See In re Don Mc., supra,* 344 Md. at 203, 686 A.2d 269. Restitution "is also penal in nature since liability arises 'as a consequence of a presumed neglect of parental responsibilities.'" *In re Zephrin D., supra,* 69 Md.App. at 761, 519 A.2d 806 (quoting *In re Appeal No. 321,* 24 Md.App. 82, 85, 329 A.2d 113 (1974)).

 As we have discussed, a court may order restitution if the "victim suffered actual medical, dental, hospital, counsel-

---

(a) *Purposes of subtitle.*—The purposes of this subtitle are:

(1) To ensure that the juvenile justice system balances the following objectives for children who have committed delinquent acts:

(i) Public safety and the protection of the community;

(ii) Accountability of the child to the victim and the community for offenses committed; and

(iii) Competency and character development to assist children in becoming responsible and productive members of society;

(2) To hold parents of children found to be delinquent responsible for the child's behavior and accountable to the victim and the community;

(3) To hold parents of children found to be delinquent or in need of assistance or supervision responsible, where possible, for remedying the circumstances that required the court's intervention;

(4) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

\* \* \*

(b) *Construction of subtitle.*—This subtitle shall be liberally construed to effectuate these purposes.

Md.Code Ann., Cts. & Jud. Proc. § 3–802 (Repl.Vol.1998 & Supp.2000).

ing, funeral, burial expenses, any other direct out-of-pocket losses, or loss of earnings as a direct result of the crime." Md. Ann.Code art. 27, § 807(a)(1)(ii) (Repl.Vol.1996 & Supp. 2000). A court may not order restitution, however, if "the defendant or liable parent does not have the ability to pay the judgment or restitution . . ." or if there exists "[g]ood cause to establish extenuating circumstances as to why a judgment of restitution is inappropriate in a case." Md. Ann.Code art. 27, § 807(a)(4) (now Crim. Proc. § 11–605(a) (2001)).[24] Therefore, a juvenile court must conduct a "reasoned inquiry" into the respondent's and parents' ability to pay. *In re Don Mc., supra,* 344 Md. at 203, 686 A.2d 269; *In re Levon A., supra,* 124 Md.App. at 145, 720 A.2d 1232.

At the restitution hearing, Delric's counsel argued that neither Delric nor his mother could afford to pay any restitution. Given that Delric was, at the time, only twelve years old, and without income or resources, counsel argued that a court order requiring Delric to pay would frustrate the rehabilitative purpose of restitution.

Delric's mother testified that she was a single parent of four sons (ages 15, 12, 9, and 7) and that Delric's father does not pay the $124 per month court-ordered child support, and is approximately $5,000 in arrears. She further testified that she makes $250 a week, but "there is nothing that she can pay" according to her counsel, because of the cost of transportation, food, clothing, and general living expenses.

After considering the evidence presented, the court determined that there was a present ability on the part of Delric's mother to pay "reasonable" restitution. He further found that Delric will be capable of earning money in a few years. The court ordered Delric and his mother to pay, jointly and severally, $6,693.89 in monthly installments of $50.00.

The juvenile court concluded as follows:

---

**24.** In addition, there is a $10,000 damage cap for "all acts arising out of a single incident." Md. Ann.Code art. 27, § 807(a)(3)(ii) (Repl.Vol. 1996 & Supp.2000) (recodified, without substantive change, at Crim. Proc. § 11–604(b) (2001)).

I think that there is a present ability, on the part of Ms. B[] to uh, pay reasonable restitution in this case. I totally agree that if I said, okay, here's a bill, six thousand, six hundred and ninety-three dollars and eighty-nine cents ($6,693.89), you've got thirty days, that's absurd. Okay? And, would, would be unjust and everything else.

But, uh, as [the ASSISTANT STATE'S ATTORNEY] quite right points out, this is not a woman who is without the means, or ability to earn a living, and is in fact, doing so, with very modest uh, expenses, at this time. She is not disabled, or in any way rendered incapable of, of earning a living. And she has a son, who, in a few years, will also be capable of earning money, to contribute toward this restitution.

Again, everything keying on the reasonableness of the payment program, that is established. And, I think that the numbers suggested by the state are probably a little high, and I'm to come in with a very low ball figure that, would amount to about a dollar seventy ($1.70) a day. Okay, I don't think that that figure is going to break the back of this family, and I don't intend for it to do so.

I understand that it's going to take a long time for it to be paid off, but uh, again, it's not the victim's fault, and certainly, whatever the hierarchy of the purposes of restitution, making the victim, in this case, completely whole, because it's within the ten thousand dollar ($10,000.00) cap, is certainly within that. And, uh, this is again, a family whose son did nothing to put himself in the way of running up these very high dental bills.

So, I am going to order judgement [sic], joint and several between Delric and his mother, in the amount of six thousand, six hundred and ninety-three dollars and eighty-nine cents ($6,693.89), payable at the rate of fifty dollars ($50.00) a month. I'm even going to make the first payment not be due, until December 1st. So, this is absolutely fair. . . .

■ Appellant does not dispute that the victim suffered actual medical, dental, and hospital bills as a direct result of

Delric's second degree assault. Instead, Delric argues that neither he nor his mother have the ability to pay, relying on *In re Levon A., supra,* 124 Md.App. 103, 720 A.2d 1232 (*rev'd on other grounds,* 361 Md. 626, 762 A.2d 572 (2000)) to support his argument that the juvenile court abused its discretion. In that case, however, we found that the court had conducted a "reasoned inquiry," and found no abuse of discretion. Among other factors, the court considered the juvenile's age and circumstances, that the juvenile would soon be old enough to get a job, and that the juvenile would have a reasonable time to pay the damages. *Id.* at 144, 720 A.2d 1232.

The facts of the case before us are not dissimilar to those in *In re Levon A.* Here, as in *In re Levon A.,* the juvenile court judge found that Delric would, before too long, be capable of earning money on a steady basis.[25] *Id.; see also In re Don Mc, supra,* 344 Md. at 203, 686 A.2d 269 (the restitution court abused its discretion because it "did not consider the age or circumstances of the child, or the ability of the child or the child's parent to pay the restitution. . . ."). Instead of a lump sum payment, the court extended the restitution, so that Delric and his mother, jointly and severally, could amortize the obligation at the rate of $50 per month; a rate the court pointed out "would amount to about a dollar seventy ($1.70) a day." Moreover, here, unlike in *In re Levon A.,* the court found a present ability of Delric's mother to pay restitution. She is not "without the means, or ability to earn a living, and is in fact, doing so, with very modest uh, expenses, at this time." As such, the amount owed by Delric on a monthly basis, assuming payment of one-half of the ordered monthly payment, would be $25 (approximately $0.85 per day); that is

---

**25.** At the restitution hearing, on October 19, 2001, Delric was 33 days shy of his 13th birthday. Delric can obtain a work permit at the age of 14. *See* Md.Code Ann., Lab. & Empl. § 3–201 *et seq.* (Repl.Vol.1999). Notably, the juvenile court stayed the order of restitution pending the outcome of this appeal. Additionally, during the hearing, Delric's mother testified that he presently could "cut grass and rake leaves," to make money.

an amount of restitution this Court found reasonable in *In re Levon A. Id.* at 145, 720 A.2d 1232.[26]

Our review of the record convinces us that the juvenile court conducted a "reasoned inquiry" into the ability to pay. We find no abuse of discretion.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

**26.** In *In re Levon A.*, we upheld a restitution payment of $443.73, over a period of 18 months, which averages just less than $25.00 per month. The Court of Appeals in *In re Levon A., supra,* 361 Md. 626, 762 A.2d 572, reversed our decision on other grounds, because (1) Article 27, § 349 did not apply, and (2) there was no causal connection to the damages incurred, as there was "no evidence that Levon, as a passive passenger in the car, had anything to do with that collision." *Id.* at 638–41, 762 A.2d 572. The legal and factual basis for the Court's reversal does not control our decision in this case. The Court of Appeals did not reverse because the trial court had not conducted a "reasoned inquiry" into the ability to pay.