Vicki HARDING

v.

RAMSAY, SCARLETT & COMPANY, INC.

Civ. A. No. M–84–1371.

United States District Court, D. Maryland.

Nov. 30, 1984.

Norris C. Ramsey, Baltimore, Md., for plaintiff.

Barrett W. Freedlander, Alan Betten, and Niles, Barton & Wilmer, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, Vicki Harding, filed a complaint pursuant to 42 U.S.C. §§ 2000e, *et seq.*, and 42 U.S.C. § 1981 alleging that the defendant, Ramsay, Scarlett & Company, Inc., terminated her solely because of her race and in retaliation for filing a charge of discrimination with the EEOC against the defendant (Paper No. 1). The defendant has moved to dismiss or for summary judgment on the ground that the plaintiff is collaterally estopped from pressing her discrimination claim in this court[1] (Paper Nos. 8 & 11). The plaintiff has responded (Paper No. 10). No hearing is necessary to decide the issue (Local Rule 6).

### Factual Background

Vicki Harding, a black female, was employed by Ramsay, Scarlett in April, 1981, as a billing clerk. On April 15, 1982, she was placed on probation for seventy five days due to her record of absenteeism. Subsequently in June, 1982, Ms. Harding filed a charge with the EEOC alleging that she had not been absent an excessive number of days and that a white employee with a worse absentee record was not placed on probation. The charge was referred to the Baltimore Community Relations Commission (BCRC).

On July 23, 1982, the charge was settled by agreement of the parties. Under the agreement, no determination was made that Ramsay, Scarlett had discriminated against Ms. Harding, but Ramsay, Scarlett, in essence, agreed to treat Ms. Harding in the same way it would treat other employees (Paper No. 8, Ex. 1).

The plaintiff satisfactorily completed her probationary period, but she allegedly began again to incur a number of absences from work. She was told on November 8, 1982 that no additional absences would be permitted through the end of 1982. Her absences allegedly continued, and she was terminated on December 10, 1982.

On December 13, 1982, Ms. Harding filed a charge with the EEOC claiming racial discrimination and retaliation with regard

---

1. The defendant also has moved to strike the plaintiff's demand for a jury trial under Title VII and to dismiss her claims for compensatory, punitive, or treble damages under Title VII (Paper No. 8). The plaintiff has conceded that she is not entitled to either a jury trial or punitive damages under Title VII (Paper No. 10).

to her termination (Paper No. 11, Ex. 1). She ultimately received a right to sue letter from the EEOC (Paper No. 11, Ex. 2).

On December 23, 1982, Ms. Harding filed for unemployment compensation with the Employment Security Administration of Maryland (ESA) (Paper No. 10, Ex. 2). The claims examiner concluded that Ms. Harding had been discharged from work as a disciplinary measure because her absenteeism without excuse constituted misconduct under Maryland Employment Insurance law. Unemployment insurance benefits were denied (Paper No. 10, Ex. 3).

Ms. Harding filed a request for appeal on January 7, 1983, asserting that "what the company fired me for isn't a written rule or company policy, he, Dennis Shoemaker, was out to get me because I filed [a] charge against him prior to this." (Paper No. 10, Ex. 4). A *de novo* hearing was held before Appeal Referee Gerald E. Askin. Ms. Harding was not represented by counsel at the hearing.

Responding to questions of the Appeal Referee, Ms. Harding testified that she had filed a charge and that the Baltimore Community Relations Commission had investigated (Paper No. 10, Ex. 5 at 25). She explained that the BCRC had been brought in because she "had been harassed" by her immediate supervisor, Mr. Sasso, and because she did not agree to the 75 day probation (*id.*). She also explained the reasons for her absences (Paper No. 10, Ex. 5 at 26–27).

Ms. Harding introduced into evidence a copy of the signed agreement settling her first racial discrimination charge (Paper No. 10, Ex. 5 at 27). She argued that she could not be terminated, under that agreement, unless the termination complied with established company policy (*id.* at 28).

Ms. Harding also testified that Dennis Shoemaker, her supervisor at the time of her termination, had orally harassed her when he "hollered and screamed across the room to me, 'Did you sent out that telex?'" (*id.* at 29).

Finally, she testified that on October 22, 1982, she was four minutes late, and was told by Mr. Shoemaker that she had to make up the four minutes. She argued with him that, for lateness of four minutes or under, the company policy was that there was no need to make up the time (*id.* at 31).

The Appeal Referee issued his decision on February 10, 1983. He found that Ms. Harding "was discharged after having been placed on probation for a second time, and [after] having been warned that any further absence would result in her termination.... In the year 1982, the claimant was absent twenty-three days for either her own sickness or sickness of a member of her family. Two of the twenty-three days were excused by the employer." (Paper No. 10, Ex. 6). The Appeals Referee also noted that Ms. Harding had filed a discrimination charge against her employer, but that the charge had been settled.

The Appeals Referee concluded that Ms. Harding was discharged for misconduct, but felt that "because of extenuating circumstances involved, [the] period of disqualification [from benefits] warrants mitigation." (*Id.*). He did not explain what the "extenuating circumstances" were.

The plaintiff appealed that decision of the Board of Appeals of the ESA which concluded that the Appeal Referee's decision was in conformity with Maryland law and thus denied her petition for review (Paper No. 10, Ex. 7).

Ms. Harding subsequently appealed the decision of the Board of Appeals to the Circuit Court for Baltimore City. Ms. Harding was not represented by counsel at the hearing held on March 1, 1984.

Judge Mary Arabian, who presided at the hearing, explained to Ms. Harding that she could not offer new evidence at the hearing and that "[t]he only issue was, was there sufficient substantial evidence before the Board and the Department for this court to affirm that decision...." (Paper No. 10, Ex. 8 at 3). Ms. Harding then argued that there was not substantial evidence to discharge her because she had not violated

company policy (Paper No. 10, Ex. 8 at 4). In addition, she argued that another employee had been docked for absences, but that she had been terminated. The court indicated that "that would be irrelevant, what somebody else did." (*Id.* at 5).

Ms. Harding also argued that under the settlement agreement she could be terminated only if she violated written company policy. She asserted, in effect, that the company breached that agreement (*id.* at 6). The judge indicated that she had read the agreement and that Ms. Harding had violated that agreement by continued absences (*id.* at 11). Judge Arabian affirmed the decision of the Board of Appeals (Paper No. 10, Ex. 9).

Ms. Harding then initiated suit in this court alleging that the defendant terminated her because of her race and in retaliation for filing an EEOC charge.

*Legal Analysis*

■ To decide whether res judicata or collateral estoppel principles will bar litigation in federal court, the court must look to the law of the state in which the judgment was entered. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982). In Maryland, res judicata bars litigation of another suit upon the same cause of action as to all matters which were, or could have been, litigated. *See MPC, Inc. v. Kenny*, 279 Md. 29, 32–33, 367 A.2d 486 (1977). Collateral estoppel applies in a second suit, even though the cause of action is different, to any determination of fact which was litigated in the first case. *Id.*

■ Maryland law is clear that res judicata and/or collateral estoppel will apply where there has been a final judgment of a court on the merits in a previous proceeding. *See, e.g., Institutional Management v. Cutler Computer*, 294 Md. 626, 633, 451 A.2d 1224 (1982); *Surrey Inn, Inc. v. Jennings*, 215 Md. 446, 454–55, 138 A.2d 658 (1958). Maryland law requires a court to look to whether a party against whom res judicata or collateral estoppel is asserted has been given a "fair opportunity

to be heard on the issue." *Washington Suburban Sanitary Commission v. TKU Associates*, 281 Md. 1, 19, 376 A.2d 505 (1977).

■ The doctrines of res judicata or collateral estoppel may be applied in a Title VII case when a state court has considered and decided the issue of discrimination. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Supreme Court held that a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim when the state court's decision would be res judicata in the State's own courts. *Id.* at 466 & 485. In this district, Judge Harvey in *Ross v. Comsat*, 34 FEP 260 (D.Md.1984), applied *Kremer* in a Title VII case in which the plaintiff's claim of discrimination had been litigated as part of the administrative proceeding before the Employment Security Administration when the plaintiff applied for unemployment compensation. *Id.* at 263.

The procedural posture of the *Ross* case is similar to that of the case at bar. In *Ross*, the plaintiff had filed a discrimination charge with the EEOC, and, like the plaintiff herein, had filed for unemployment compensation with the ESA. His claim before the ESA stated that he had been discharged because he had filed charges with the EEOC. 34 FEP at 261–62. Ross' unemployment compensation claim was investigated by the claims examiner who concluded that Ross had been discharged for misconduct. The plaintiff appealed that decision and at a *de novo* hearing the Appeals Referee concluded that Ross had not been discriminatorily discharged but had been discharged for misconduct. Ross appealed to the ESA Board of Appeals which denied his petition. Thereafter, he appealed to the Circuit Court of Baltimore City which affirmed the decision of the Board of Appeals. *Id.* at 262–63.

In two ways, though, *Ross* is dissimilar from the instant action. First, Ross was

represented by counsel at all stages of the ESA litigation. *Id.* at 262–63. Ms. Harding was not. Second, the Appeals Referee in *Ross* specifically found that Ross' discharge was not discriminatory or in retaliation for filing an EEOC charge. *Id.* The Appeals Referee in Ms. Harding's case, although he noted that she previously had filed a discrimination charge which was settled, did not allude to the racial discrimination issue in his decision. He found only that she had been discharged for misconduct. Further, on appeal before the Circuit Court for Baltimore City, Ms. Harding attempted to argue that she had been treated differently from another employee with absences, but she was told by Judge Arabian that that was irrelevant.

It appears, from the records of the proceedings before the Appeals Referee and before the Circuit Court, that the issue of discriminatory discharge to some extent was placed before the Appeals Referee. He heard testimony from Ms. Harding regarding her discrimination charge. This court notes, however, that Ms. Harding was a *pro se* litigant in that proceeding and that her testimony concerning the relationship between the alleged discrimination, her absences, and her ultimate discharge was confusing at best. In addition, although the Appeals Referee noted that a discrimination charge, the nature of which he did not characterize, had been filed, he did not directly state in his opinion whether or not racial discrimination had occurred.

■ Because this court has some question about the extent to which the racial discrimination issue was litigated at the administrative hearing and because Ms. Harding was a *pro se* litigant at that time, the doctrine of collateral estoppel will not bar the litigation of the racial discrimination issue in this federal forum.[2]

■ The doctrine of collateral estoppel, however, does bar the re-litigation of the misconduct issue. A factual determination was made in the ESA proceedings that Ms.

Harding was absent for 23 days in 1982, only two of which were excused. That fact formed the basis of the finding that Ms. Harding was discharged for misconduct. It is clear from the record that Ms. Harding had a full and fair opportunity to litigate that issue on the State administrative and judicial level.

The case before this court is, as to count I, a disparate treatment case. The plaintiff alleges in count I that she was terminated but that white employees guilty of the same conduct were not (Paper No. 1 at 3). In count II she alleges that she was terminated because she had filed a discrimination charge against her employer.

■ In discrimination cases the burden of "persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ To prove discriminatory intent, it is not necessary for the plaintiff to prove "that the challenged action rested solely on racially discriminatory purposes." *Arlington Heights v. Metropolitan Housing Corp.,* 429 U.S. 252, 265, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977); *see also Dowdell v. City of Apopka,* 698 F.2d 1181, 1185 (11th Cir.1983). But even if the plaintiff proves that the challenged action was motivated in part by a racially discriminatory purpose, the defendant's decision is not invalidated automatically. Such proof shifts the burden to the defendant to show that the same decision would have been made even if the impermissible purpose had not been considered. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Arlington Heights,* 429 U.S. at 270 n. 21, 97 S.Ct. at 566 n. 21. If the defendant meets that burden, "the complaining party ... no longer fairly could attribute the injury com-

**2.** It is clear from the *Ross* decision that the discrimination claim could have been litigated before the ESA, but the principles of res judicata are not applicable in this Title VII action, which presents a cause of action different from the one presented to the ESA.

plained of to improper consideration of a discriminatory purpose." *Arlington Heights*, 429 U.S. at 270 n. 21, 97 S.Ct. at 566 n. 21. *See also Lewis v. Bethlehem Steel*, 440 F.Supp. 949, 966 (D.Md.1977).

▮ In the instant action, assuming the plaintiff could establish that the defendant's decision in part was racially motivated, the defendant has come forward, through the operation of collateral estoppel, with sufficient evidence to prove that the plaintiff would have been discharged even if the impermissible purpose had not been considered.

In effect, the plaintiff, because she is collaterally estopped by the state administrative agency and judicial ruling, cannot "by the process of eliminating the legitimate reason [for her discharge show] that the decision was governed by an illegitimate one." *Banerjee v. Board of Trustees*, 648 F.2d 61, 63 (1st Cir.1981), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). *See also Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). The state proceedings stand as a bar to such an assertion.

Accordingly, it is this 30th day of November, 1984, by the United States District Court for the District of Maryland, ORDERED:

1) That the defendant's motion to dismiss or for summary judgment be, and is hereby, GRANTED.

2) That Judgment shall be entered for defendant with costs.

3) That the Clerk shall mail a copy of this Memorandum and Order to counsel for the parties.