HORWITZ, SCHAKNER AND ASSOCIATES, INC., *et al.*, Plaintiffs-Appellants, v. RANDALL C. SCHAKNER, Defendant-Appellee.

First District (4th Division)   No. 1—93—0468

Opinion filed August 12, 1993.

Nicholas P. Iavarone and Vincent J. Hart, both of Bellows & Bellows, of Chicago, for appellants.

James J. Moylan & Associates, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiffs, Horwitz, Schakner & Associates, Inc., and Gerald Horwitz, filed a declaratory judgment action seeking a permanent stay of a pending grievance arbitration on the grounds of *res judicata* and collateral estoppel. The motion by the defendant, Randall Schakner, for summary judgment compelling arbitration was granted by the trial court. Horwitz appeals from the circuit court's order and contends that the grievance at issue was barred under the doctrines of *res judicata* and collateral estoppel by prior arbitration awards between the parties.

Horwitz, Schakner & Associates, Inc., is a securities brokerage firm with its principal place of business in Skokie, Illinois. Horwitz is chairman of the board and Schakner was president of the firm. Bear Sterns, Inc., functioned as the clearing broker for Horwitz, Schakner & Associates, Inc.

In October 1987, as a result of the stock market crash, a number of Horwitz's customers failed to meet margin calls. Schakner had sold securities to several customers with unsecured debits. Bear Stearns charged the customer deficits to its own account and required a per-

sonal guarantee from Schakner for $250,000. Schakner maintained a personal brokerage account with Stearns which contained in excess of $200,000 in cash and securities.

In December 1987, Schakner left the firm and Horwitz authorized Stearns to liquidate Schakner's account and apply the proceeds to cover the deficits in his customers' accounts. Horwitz told Stearns that Schakner was personally liable for the deficits in his own customers' accounts under their company policy.

In February 1988, Schakner filed a statement of claim in arbitration before the Chicago Board Options Exchange (CBOE) against Bear Stearns and Horwitz, Schakner & Associates. The CBOE dismissed the claim against Horwitz because neither Schakner nor Horwitz was a member of the CBOE and the CBOE rules did not provide for arbitration between nonmembers. Schakner refiled his claim before the CBOE against Bear Stearns, who was a CBOE member. This claim constitutes the basis for Horwitz's *res judicata* argument. Schakner's claim alleged in part:

> "In response to a demand by Horwitz, Schakner & Associates, Inc., Bear Stearns liquidated Randall C. Schakner's personal brokerage account *** in accordance with Horwitz, Schakner & Associates', Inc. instructions."

Schakner further alleged that he was not responsible for the debits in the customer accounts because the customers were sophisticated investors who were familiar with the inherent risks. Since he was not at fault for the creation of the debit, Schakner claimed, he should not be held liable for the full amount. The claim also alleged that, pursuant to his employment agreement with Horwitz, Schakner was entitled to his expense allowance, commissions, and the value of his stock shares.

Bear Stearns' answer to the claim alleged that it rightfully liquidated Schakner's account for two reasons. Under Horwitz's company policy, Schakner was responsible for all of the debits in the accounts of customers for whom he acted as the account executive. Pursuant to this policy, Horwitz had the right to debit Schakner's account at Bear Stearns and to apply the proceeds to the debits in his customers' accounts. Secondly, Stearns had a customer agreement with Schakner, personally, which stated that Stearns had a continuing security interest in Schakner's holdings and could apply those holdings to any of Schakner's obligations and liabilities to Bear Stearns.

Following a three-day hearing, the CBOE returned an award in favor of Bear Stearns. Schakner had also filed a statement of claim in arbitration before the National Association of Securities Dealers

(NASD) against Horwitz, Schakner & Associates, Inc. That claim was virtually identical to the claim filed against Stearns before the CBOE. Because the NASD found that the claim involved elements of a dispute between members and elements of a dispute between a customer and a member, it bifurcated the claim into two claims, No. 88—2126 and No. 88—1531. Horwitz filed counterclaims in both actions seeking damages, exceeding the amount of the liquidation of Schakner's account, which resulted from Schakner's alleged misconduct as a broker. The counterclaim alleged, in part, that as president of Horwitz, Schakner & Associates, Schakner had initiated a policy whereby the account executive became responsible to Horwitz for 100% of all unsecured customer debits. The counterclaim further alleged that Horwitz, pursuant to the 100% charge-back policy, requested that Schakner's account at Bear Stearns be charged $206,954 for outstanding debits. Following a hearing on claim No. 88—2126, the NASD awarded Schakner $157,261 on his claim, and Horwitz was awarded $163,000 on its counterclaim.

Horwitz subsequently filed the instant complaint for declaratory judgment in the circuit court alleging that Schakner was precluded under the doctrines of *res judicata* and collateral estoppel from pursuing the NASD arbitration No. 88—1531.

The court stayed NASD proceeding No. 88—1531. Schakner filed a counterclaim to compel arbitration. Both parties filed summary judgment motions and the court granted Schakner's motion and compelled the parties to arbitrate NASD No. 88—1531. In its order, the court made no ruling regarding the *res judicata* and collateral estoppel effects of the prior arbitrations.

Horwitz argues that the court is the appropriate tribunal to determine questions involving the *res judicata* or collateral estoppel effects of prior arbitrations. Horwitz relies on *Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253, and other cases which have held that the court is the appropriate tribunal to determine questions involving the *res judicata* and collateral estoppel effects of a prior arbitration award. Schakner responds that under the Uniform Arbitration Act (Act) (Ill. Rev. Stat. 1989, ch. 10, par. 101 *et seq.*), a court has no discretion but to order arbitration concerning any issues subject to arbitration. Schakner does not cite to any particular section of the Act. Further, Schakner contends that an arbitrator's scope of power extends to rendering a decision as to what issues are arbitrable.

■ The Uniform Arbitration Act does not control which issues are subject to arbitration; that is governed by the arbitration agree-

ment between the parties. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149.) Section 2 of the Act provides in pertinent part:

> "(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party." (Ill. Rev. Stat. 1989, ch. 10, par. 102(b).)

Section 2 provides that whether the subject matter of the grievance is within the scope of the agreement to arbitrate may be tested preliminarily in the courts. (*Board of Trustees of Junior College District No. 508 v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 343 N.E.2d 473.) Under section 2 of the Uniform Arbitration Act, the court should decide the arbitrability issue in cases where it is clear that the issue is within the scope of the arbitration agreement, and also when it is apparent that it is not within the ambit of the arbitration clause. (*Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr* (1988), 124 Ill. 2d 435, 530 N.E.2d 439.) The issue of whether a dispute is beyond the scope of the agreement to arbitrate, by reason of a prior arbitration, may be tested in the courts under section 2 of the Act. *Elliott v. Inter-Insurance Exchange of the Chicago Motor Club* (1988), 169 Ill. App. 3d 702, 523 N.E.2d 1086; *Monmouth Public Schools, District No. 38 v. Pullen* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100.

■ In discussing this issue, courts have relied upon the reasoning of reviewing courts in New York, upon whose Arbitration Act the Uniform Arbitration Act was patterned. As stated in *Rembrandt Industries, Inc. v. Hodges International, Inc.* (1976), 38 N.Y.2d 502, 504, 344 N.E.2d 383, 384:

> "It is settled law that the doctrine of *res judicata* is applicable to issues resolved by earlier arbitration. *** The scope of the award and, therefore, its *res judicata* effect, is an issue properly determinable by the court and not the arbitrators ***."

Thus, we believe that in the instant case, the court was the appropriate tribunal to decide the *res judicata* effect of the CBOE and NASD arbitrations on the arbitration of NASD 88—1531.

Horwitz contends that the doctrine of *res judicata* bars the NASD arbitration at law because the CBOE award in favor of Bear Stearns, Horwitz's agent, exonerated Horwitz, his principal. Horwitz further argues that Schakner's claim that Horwitz did not have the authority

to instruct Stearns to liquidate his account has already been determined by virtue of the CBOE award.

Schakner responds that the issue of the propriety of Horwitz's instructions has yet to be arbitrated. He argues that Horwitz was not a party to the CBOE proceeding and Horwitz was not in privity with Stearns because Stearns could have relied upon its customer agreement with Schakner in deciding to liquidate his account. In other words, Schakner's logic is that there were two possible reasons why Stearns liquidated his account: either it was following Horwitz's instructions, or it was exercising its contractual right to liquidate the account *vis-a-vis* its customer agreement with Schakner. And, Schakner reasons, since the arbitrators did not explain their finding that Stearns properly liquidated his account, he has a claim against Horwitz for wrongfully liquidating his account.

■ There is a presumption that the arbitrators considered and fully determined all matters submitted to them. (*Stearns v. Cope* (1884), 109 Ill. 340, 348-49.) There is no requirement that the arbitrator's award set out specific findings on each claim. *Edward Electric Co. v. Automation, Inc.* (1992), 229 Ill. App. 3d 89, 593 N.E.2d 833.

■ The doctrine of *res judicata*, also known as "estoppel by judgment," provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.) The doctrine is not limited to matters which were actually litigated and resolved in the prior suit, but also extends to any matters which might have been raised in that suit to sustain or defeat the claim. *Housing Authority v. YMCA*, 101 Ill. 2d at 251-52, 461 N.E.2d at 962.

The essential elements of *res judicata* are (1) identity of parties or their privies in the two suits; (2) an identity of causes of action in the earlier and later suit; (3) and a final judgment on the merits in the earlier suit. *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 545 N.E.2d 481.

In this case, *res judicata* is operative as a bar against the NASD arbitration because the issue of the propriety of liquidating Schakner's account at Bear Stearns was previously decided in the CBOE arbitration. While Stearns was named in the CBOE arbitration, instead of Horwitz, privity exists because Stearns was Horwitz's agent. As such, adjudication in favor of the agent would necessarily exonerate the principal. (*Hays v. Louisiana Dock Co.* (1983), 117 Ill.

App. 3d 512, 452 N.E.2d 1383.) Thus, there was an identity of parties in the two claims, the claims submitted before the CBOE and the NASD were identical, and a final judgment was entered on the merits in the CBOE arbitration. The CBOE arbitration award determined that the liquidation of Schakner's account was proper. It is presumed that the arbitrators fully determined all of the issues before them, including whether Stearns acted properly, in accordance with Horwitz's instructions, to liquidate Schakner's account. The CBOE award was binding on the parties and any inquiry into the matters originally controverted is forever closed.

Horwitz has also argued that the award on his counterclaim in the NASD arbitration No. 88—2126 precludes the instant arbitration. As we have already concluded that the CBOE award barred arbitration of NASD No. 88—1531, we need not address this contention.

We conclude, therefore, that the trial court incorrectly granted Schakner's motion for summary judgment, thus compelling arbitration of NASD No. 88—1531. We find that, as a matter of law, the CBOE award operates as a bar to arbitration of NASD No. 88—1531. We, thus, reverse summary judgment in favor of Schakner and remand with directions consistent with this opinion.

Reversed and remanded.

CAHILL and HOFFMAN, JJ., concur.