**WESTERN MARYLAND WIRELESS CONNECTION, Plaintiff**

v.

**Primo ZINI et al., Defendants.**

**Civil No. L–08–741.**

United States District Court,
D. Maryland.

March 5, 2009.

---

Jason C. Buckel, Levasseur and Buckel, Cumberland, MD, for Plaintiff.

Daniel P. Moylan, Robert T. Shaffer, III, Murphy and Shaffer LLC, Baltimore, MD, Christopher B. Seaman, Richard J.O. Brien, Sidley Austin LLP, Chicago, IL, for Defendants.

## MEMORANDUM

BENSON EVERETT LEGG, Chief Judge.

Now pending are two motions: (i) defendants Primo Zini, Tom Catani, United States Cellular Company, and USCC Distribution Company, LLC's, (collectively the "defendants") motion for summary judgment (Docket No. 20), and (ii) defendants' motion for Rule 11 sanctions against plaintiff Western Maryland Wireless, Inc. ("Western Maryland") and its counsel (Docket No. 28). No hearing is required because the issues are narrow, purely legal in nature, and indisputably clear. For the reasons stated in the accompanying Order, the Court GRANTS defendants' motion for summary judgment and GRANTS defendants' motion for Rule 11 sanctions against Western Maryland and its counsel, Mr. Jason Buckel.

## I. Background

Plaintiff Western Maryland is a former authorized agent for U.S. Cellular, a provider of wireless communication services. As an authorized agent, Western Maryland operated retail stores that sold U.S. Cellular wireless telephones, service plans, and accessories. Western Maryland was owned and operated by Allison Kinsley and Mark Reeder. In May 2004, Western Maryland, though Kinsley and Reeder, entered into an Agent Contract and Equipment Agreement with U.S. Cellular. Problems developed quickly, and on February 23, 2005, U.S. Cellular terminated the Agreement for cause due to numerous breaches by Western Maryland.

Pursuant to the Agreement, the dispute was submitted for binding arbitration. U.S. Cellular, as claimant, pressed two claims; Western Maryland, the respondent, pressed eleven counterclaims. The arbitrator received and considered pre- and post-hearing briefs, each with voluminous exhibits. The arbitrator held a three day trial during which numerous witnesses testified and documents were received into evidence. In an eight page opinion, the arbitrator addressed each claim and coun-

terclaim individually. He found Western Maryland to be in breach of contract and awarded U.S. Cellular $195,411.01 in damages. He denied all eleven of Western Maryland's claims on the merits.

In the instant complaint, Western Maryland seeks to revive the exact claims denied in binding arbitration. Western Maryland filed the instant complaint *pro se* in state court, and it was removed by defendants. Defendants then answered. The complaint plead seven counts against the defendants: fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty/constructive trust, unfair and deceptive acts, failure to act in good faith, and accounting.[1] Western Maryland raised these identical counts as counterclaims at arbitration.

Because under the Local Rules a corporation cannot proceed *pro se,* the Court ordered it to obtain counsel. Mr. Jason Buckel entered his notice of appearance on May 1, 2008. On May 5th a scheduling order issued, but was suspended by consent of both parties to allow the Court to rule on the defendants' instant motion for summary judgment, which was filed on May 16th. Mr. Buckel then sought and received leave to file his opposition two weeks after the normal deadline. On June 18th, having now been in the case for six weeks, Mr. Buckel filed the plaintiff's opposition. The defendants replied shortly thereafter.

On July 23, 2008, defendants served a motion for sanctions under Rule 11, claiming that Mr. Buckel's opposition to the motion to dismiss was frivolous and misstated material facts. Pursuant to Rule 11, Mr. Buckel was afforded the required three weeks to discuss the proposed motion with defendants before they filed it with the Court on August 15, 2008. Docket No. 28. Mr. Buckel did not contact the defendants. Nor has Mr. Buckel written this Court in response to the Rule 11 motion. On February 10, 2009, the Court wrote Mr. Buckel a letter that "directed [him] to show cause, in the form of a letter to this Court, by February 18, 2009 as to why Rule 11 sanctions against you and your client are inappropriate." Docket No. 29. Mr. Buckel did not respond.

## II. Standard of Review

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987).

---

1. During the six week period during which Mr. Buckel represented Western Maryland, it did not seek leave to amend the *pro se* complaint. In a footnote to its opposition, plaintiff now, informally and belatedly, seeks leave to amend. This request is denied. Western Maryland had ample time to request leave to amend prior to filing its opposition, including 32 days after the defendants filed the instant

motion. Furthermore, amendment would be futile because Western Maryland could not bring any claim arising from its failed business relationship with the defendants that would not be barred by res judicata, as discussed *infra. Simons v. United States,* 75 Fed.Cl. 506, 509 (Fed.Cl.2007) (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).

■ The decision to impose sanctions or award attorney's fees under Fed. R.Civ.P. 11 lies within the sound discretion of the district court. *Deadwyler v. Volkswagen of America, Inc.*, 884 F.2d 779, 784 (4th Cir.1989). The "proper inquiry in ruling on Rule 11 motions is whether a reasonable attorney in like circumstances would believe his actions to be factually and legally justified. If the actions of an attorney or a party fail to meet this standard, an award of sanctions is mandatory under the rule." *Artco Corp. v. Lynnhaven Dry Storage Marina, Inc.*, 898 F.2d 953, 956 (4th Cir.1990) (internal citations and quotations omitted).

## III. Analysis

Western Maryland has failed to create a dispute of material fact. Defendants press three theories as to why plaintiff's claims are barred: res judicata, collateral estoppel, and arbitration and award. As discussed below, each of defendants' theories are meritorious and summary judgment must be granted in their favor.

### A. Res Judicata

■ In the Fourth Circuit, once an action reaches a "final judgment on the merits," the doctrine of res judicata "bars further claims by parties ... based on the same cause of action." *Young–Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir.1991). Specifically, res judicata "bars a party from relitigating a claim that was decided or could have been decided in an original suit. The doctrine was designed to protect litigants from the burden of relitigating an identical issue with the same party or his privy and

to promote judicial economy by preventing needless litigation." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161–62 (4th Cir.2008) (internal citations, quotations, and brackets omitted).

■ In a diversity action, as here, federal courts apply the res judicata rules of the state in which the prior judgment was obtained. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Illinois law applied throughout arbitration, and its application was undisputed by Western Maryland. The facts support the application of Illinois law.[2] Conversely, nothing supports the application of Maryland law for the first time in the history of this dispute.[3] The choice of law issue is largely irrelevant because Illinois and Maryland law are substantively identical on this point. *See Kutzik v. Young*, 730 F.2d 149, 151 (4th Cir. 1984). Plaintiff does not suggest it would benefit from the application of Maryland law, nor does it suggest any material differences between the states' laws.

■ Res judicata applies if: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 889 (1998). Because plaintiff's claims satisfy this test, any claims that were brought at arbitration, or could have been brought at arbitration, are forever barred by the doctrine of res judicata.

### 1. Final Judgment

■ "[A]rbitration awards have the same res judicata and collateral estoppel

---

2. The contract's choice of law provision, found directly above the signature line, states in bold, all capital letters that Illinois law shall govern the contract. Further, U.S. Cellular's corporate headquarters is in Chicago.

3. Western Maryland "readily concede[s]" that Illinois law governs the "substantive merits of any claims under" the Agreement. Opp'n at 4 n. 1.

effect as court judgments." *Peregrine Fin. Group, Inc. v. Martinez*, 305 Ill. App.3d 571, 238 Ill.Dec. 757, 712 N.E.2d 861, 867 (1999).[4] Illinois courts stress the universality of this rule in cases where the parties by "mutual agreement submit a dispute to arbitration, the award by the arbitrators is final and binding." *Rosee v. Bd. of Trade*, 43 Ill.App.3d 203, 1 Ill.Dec. 730, 356 N.E.2d 1012, 1036 (1976). Here, the Exclusive Agent Contract requires that all disputes "shall be settled by arbitration" and that "[t]he arbitration decision shall be final and binding on both parties." O'Brien Decl., Ex. 4 ¶ 23. Accordingly, the arbitration award in this case is a final judgment for res judicata purposes.

## 2. Same Causes of Action

■■■■ Res judicata bars any claims that were brought, or could have been brought, in the prior arbitration. *Laurel Sand & Gravel, Inc.*, 519 F.3d at 161–62; *accord Housing Authority v. YMCA*, 101 Ill.2d 246, 78 Ill.Dec. 125, 461 N.E.2d 959, 962 (1984). Illinois uses the "transactional test" to determine what claims were brought or could have been brought in a prior action. *River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 892–93 (1998). The Illinois Supreme Court held "[s]eparate claims will be considered the same cause of action for purposes of res judicata if they arise from" the same transaction or series of connected transactions "regardless of whether they assert different theories of relief." *Id.* at 893.[5] Under this broad, inclusive test, claims arising from the same group of operative facts are likely part of the same cause of action "even if there is not a substantial overlap of evidence." *Id.*

■■■■ This element is met on the face of the complaint because Western Maryland advances identical claims here as it did at arbitration. In both fora Western Maryland claimed fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty/constructive trust, unfair and deceptive acts, failure to act in good faith, and accounting.[6] At arbitration, Western Maryland lost on each one of these claims.[7]

This element is also met based on the substance of plaintiff's claims. The substance of the transaction is the creation, performance, and termination of Western Maryland's Agent Contract with U.S. Cellular. Western Maryland does not dispute this. Instead, it misstates both the law and the facts in a futile effort to relitigate its claims. Plaintiff argues that not "all of the claims raised by the instant complaint are issues actually litigated and decided in the 2006 arbitration." Opp'n at 5. This statement both grossly misstates the law of res judicata and is factually incorrect.

4. Western Maryland claims that arbitration awards are not judgments, so cannot be subject to res judicata. Opp'n at 3–4. To argue this, plaintiff must ignore defendants' citation of federal, Illinois, and Maryland law which universally hold that arbitration awards are identical to court judgments for res judicata purposes. Mot. at 12 & n. 5.

5. Contrary to plaintiff's claims, Maryland employs the same transactional test as Illinois, so the choice of law issue is immaterial. *See Anne Arundel County Bd. v. Norville*, 390 Md. 93, 887 A.2d 1029, 1038 (2005).

6. In arbitration, Western Maryland also claimed detrimental reliance/promissory estoppel, reformation/unconscionability, indemnification, and attorney's fees. O'Brien Decl. Ex. 2.

7. Illinois law presumes that arbitrators consider and fully determine all matters submitted to them. *Horwitz, Schakner & Assocs., Inc. v. Schakner*, 252 Ill.App.3d 879, 192 Ill. Dec. 515, 625 N.E.2d 670, 674 (1993). Similarly, there is no requirement that an arbitrator's award set out specific findings on each claim. *Id.*

Western Maryland conflates the narrower legal standard for collateral estoppel (discussed *infra*) with the broader standard for res judicata. Res judicata bars any claims that were brought and all claims that "could have been brought" arising from the same transaction. *Laurel Sand & Gravel, Inc.*, 519 F.3d at 161–62. It is therefore irrelevant whether the issues were raised at arbitration or not, let alone litigated and decided, as long as they were transactionally related.

The claim is also factually incorrect. In opposition, plaintiff does not articulate a single claim that would not be barred in this suit.[8] Western Maryland instead pins its opposition on ephemeral claims it describes as "broader themes sounded in the instant complaint, either expressly or implicitly, ... [that] appear not to have been expressly presented as counterclaims nor decided in the prior arbitration." Opp'n at 5. For res judicata, it is irrelevant whether these claims were expressly presented or actually decided at arbitration.

Specifically, Western Maryland contends that two related claims are not barred: (i) U.S. Cellular's improper favoritism towards G & S Wireless (the "improper favoritism claim"), and (ii) U.S. Cellular's "potentially unfair, anti-competitive and tortious drive to put Western Maryland out of business" (the "tortious interference claim"). Opp'n at 5. In its complaint, Western Maryland claims U.S. Cellular had improper dealings with G & S Wireless, another U.S. Cellular agent and a competitor to Western Maryland. Compl. ¶ 3, 5. Western Maryland alleged this improper conduct included U.S. Cellular's payment of rent and advertising for G & S Wireless stores in Clarksburg and Mor-

gantown, West Virginia. *Id.* ¶ 3. Western Maryland claims U.S. Cellular interfered with its own leases in these locations. *Id.* ¶ 5.

Western Maryland raised these two identical claims at arbitration. In its pre-arbitration brief, it asserted that U.S. Cellular committed "tortious interference with contract and interference with business relationships, specifically, actions which indicate discrimination in favor of another firm known as G & S Wireless, especially in regard [sic] locations in Clarksburg and Morgantown, West Virginia." O'Brien Decl. Ex. 2 at 3; *see also* O'Brien Supp. Decl. Ex. 17 at 3, 6–7. It further asserted that U.S. Cellular engaged in "[d]irect and malicious interference with relationships between [Western Maryland] and its landlords in more than one retail center location." *Id.*

For a claim to be barred it need only to have been capable of being raised. *Laurel Sand & Gravel, Inc.*, 519 F.3d at 161–62. In some cases, determining whether a claim not actually litigated in the prior proceeding was part of the same transaction can present difficulties. This case does not fall in that category because the precise claims that Western Maryland raises in its complaint herein were expressly and definitively litigated during the arbitration and actually decided by the arbitrator. Thus, applying the transactional test in this instant presents no complexity. Accordingly, all of Western Maryland's instant claims share an identity with those they raised at arbitration.

### 3. Same Parties or Privies

Without citing a single case in support of its argument, Western Mary-

---

8. Western Maryland concedes that any claims surrounding the accounting of equipment purchases are barred. Opp'n at 5. This admission bars Western Maryland's claims for fraud, negligent misrepresentation, breach of contract, and accounting, which at their core all allege "improper billing" and "flawed accounting" associated with equipment purchases.

land asserts that its claims may still proceed against defendants Catani and Zini because they were not named parties at arbitration. Opp'n at 6. Res judicata applies to parties and their privies. *River Park, Inc.*, 234 Ill.Dec. 783, 703 N.E.2d at 889.

Both Catani and Zini were U.S. Cellular employees who dealt with Western Maryland during its period as an authorized agent. Mr. Catani was U.S. Cellular's regional vice president for the East region, which included the Western Maryland market. Mr. Zini was a U.S. Cellular agent manager who supervised Western Maryland's contract.

 A corporation's employees, officers, and directors are privies for res judicata purposes under Illinois law. *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir.1986); *Zurich Capital Markets Inc. v. Coglianese*, 383 F.Supp.2d 1041, 1049 (N.D.Ill.2005). The rule exists because "it is the identity of interest that controls in determining privity, not the nominal identity of the parties." *Ill. Non–Profit Risk Mgmt. Ass'n v. Human Serv. Ctr. of S. Metro–E.*, 378 Ill.App.3d 713, 318 Ill.Dec. 732, 884 N.E.2d 700, 708 (2008). Because a corporation can only act through its agents, Western Maryland's claims against U.S. Cellular at arbitration were based entirely on claims against its employees, including Catani and Zini. Plaintiff's complaint does not allege that either Catani or Zini acted outside the scope of their employment, or any theory upon which they could somehow be independently liable for their actions. There-

fore, Catani and Zini are privies of U.S. Cellular, and accordingly Western Maryland's claims against them are barred under res judicata.

## B. Collateral Estoppel

 Based on the above analysis, Western Maryland's claims here are so similar to those raised at arbitration that they are also precluded under the narrower doctrine of collateral estoppel. Under Illinois law, collateral estoppel applies when 1) "the issue decided in the prior adjudication is identical with the one presented in the current action," 2) "there was a final judgment on the merits in the prior adjudication," and 3) "the party against whom estoppel is asserted was a party to, or in privity with a party to, the prior adjudication." *Du Page Forklift Serv. Inc. v. Material Handling Serv., Inc.*, 195 Ill.2d 71, 253 Ill.Dec. 112, 744 N.E.2d 845, 849 (2001).

 In its opposition, Western Maryland concedes that many of the issues raised in the complaint were "litigated and decided." *See* note 8 *supra* (citing Opp'n at 5). Illinois law does not demand perfect congruence of the issues, only that the "gravemen" of the claims are identical. *DuPage Forklift Serv. Inc.*, 253 Ill.Dec. 112, 744 N.E.2d at 852 (dismissing an identically captioned claim that raised a similar theory of recovery).

 Western Maryland's improper favoritism and tortious interference claims advanced in its opposition are identical to the claims raised, litigated, and decided at arbitration,[9] embrace the same theory of relief,[10] and require identical evidentiary

---

9. *Compare* Complaint ¶ 3, 5 *and* Opp'n at 5–6 *with* O'Brien Decl. Ex. 2–3 *and* O'Brien Supp. Decl. Ex. 17 at 3, 6–7.

10. The theory of relief is tortious interference with Western Maryland's business and leases. *Compare* Complaint ¶ 3, 5 *and* Opp'n at 5–6

*with* O'Brien Decl. Ex. 2–3 *and* O'Brien Supp. Decl. Ex. 17 at 3, 6–7. Western Maryland reiterated these same claims in its post-hearing brief. See O'Brien Supp. Decl. Ex. 18 at 4–6, 12–16.

support [11]. Accordingly, the claims are also precluded under collateral estoppel.

## C. Arbitration and Award

 Western Maryland's claims are also barred by the affirmative defense of arbitration and award. Fed. R.Civ. P. 8(c). This defense requires dismissal of claims that were previously the subject of arbitrations that result in a decision or award. *General Drivers v. Riss & Co.*, 372 U.S. 517, 519, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963); *accord White v. Chem. Leaman Tank Lines, Inc.*, 490 F.2d 1267, 1268 (4th Cir.1974); *see also Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 106 (2d Cir.2002). Western Maryland asserts the identical claims here that were the subject of the prior arbitration, which resulted in an award to U.S. Cellular and the rejection of all of Western Maryland's claims. Therefore, this defense applies and requires the dismissal of Western Maryland's identical claims.

## D. Motion for Sanctions against Western Maryland and Its Counsel

On August 15, 2008, defendants filed a motion seeking sanctions against Western Maryland and its counsel under Federal Rule of Civil Procedure 11. Defendants seek their attorneys' fees and costs incurred in connection with their motion for summary judgment and their Rule 11 motion for sanctions. Neither Western Maryland nor its counsel has responded to the motion.[12] The Court even wrote Mr. Buckel a letter requesting a response, but to no avail.

Defendants argue that Western Maryland's claims are "objectively unreasonable, and thus legally frivolous, under Rule 11(b)(2), because they are clearly barred by the previous arbitration." Docket No. 29, Mot. for Sanctions, at 1. Defendants also argue that Western Maryland violated rule 11(b)(3) by making false factual allegations in its motion in opposition to summary judgment regarding the scope of its own counterclaim in the arbitration. *Id.* Specifically, defendants seek to sanction Western Maryland's response in opposition to the motion to dismiss.

### 1. Standard

 "[T]he central purpose of Rule 11 is to deter baseless filings in district court and thus ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Under Rule 11, by filing a signed pleading, the attorney certifies that "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "the factual contentions have evidentiary support." Fed.R.Civ.P.

---

11. At arbitration, Western Maryland's counsel extensively examined defendants Catani and Zini in an effort to prove its tortious interference claim. O'Brien Supp. Decl. Ex. 19. Western Maryland's principals, Mark Reeder and Allison Kinsley, also testified in support of this same claim. *See id.*

12. According to the Rule 11 motion, on July 9, 2009, two days before defendants' filed their reply, defendants' counsel Mr. Daniel Moylan attempted to contact plaintiff's counsel Mr. Buckel by phone and email. Mr. Moylan sought to express the belief that Western Maryland lacked any reasonable basis to contest summary judgment and that the defendants may make a Rule 11 motion against Mr. Buckel. Mr. Moylan never received a returned call or email. Nor did Mr. Buckel respond to Mr. Moylan during the three week period between when Mr. Buckel was served with the Rule 11 motion and when it was filed with the Court. *See* Rule 11 Mot. at 5.

11(b)(2)-(3). In the words of the Fourth Circuit, Rule 11 requires an attorney must conduct a "reasonable investigation of the factual and legal basis for his claim." *Brubaker v. City of Richmond*, 943 F.2d 1363 (4th Cir.1991).

The Court may impose an appropriate sanction on any attorney or party that is responsible for the violation of the rule, and any "order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction." Fed. R.Civ.P. 11(c)(1), (6).

## 2. Analysis

 Sanctions in this case are undoubtedly necessary to deter Western Maryland and its counsel from advocating untenable, frivolous legal positions. Western Maryland filed a *pro se* complaint. Because a corporation must proceed with counsel, the Court ordered Western Maryland to obtain counsel or risk dismissal. Mr. Jason Buckel entered his appearance on behalf of Western Maryland on May 1, 2008, and on June 18th he filed Western Maryland's response.[13] Western Maryland's *pro se* complaint filed in state court is not sanctionable. Mr. Buckel did not author the complaint, so he cannot be taken to task for failing to adequately investigate its legal and factual basis. Nevertheless, this fact does not extricate Mr. Buckel from the Rule 11 snare.

Mr. Buckel did author the motion in opposition to summary judgment, which represented as meritorious claims raised in the *pro se* complaint. These claims, in fact, were facially untenable and without any colorable legal support. The opposition, therefore, is sanctionable under Rule 11(b)(2) because it advocates and reaffirms frivolous claims from the complaint. *See*

*Wallace v. Mercantile County Bank*, 514 F.Supp.2d 776, 795 (D.Md.2007); 5A Charles Alan Wright & Arthur W. Miller, *Federal Practice and Procedure* § 1333 (3d ed. 2008) (explaining that pressing or "later advocating" a frivolous claim through a subsequent motion revives and reaffirms the frivolous claim).

 Because defendants' motion for summary judgment is a textbook example of claims barred by res judicata, Western Maryland's arguments in its opposition are objectively unreasonable and thus legally frivolous under Rule 11(b)(2). "A legal argument fails to satisfy Rule 11(b)(2) when in applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified. The legal argument must have absolutely no chance of success under the existing precedent to contravene the rule." *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th Cir.2006) (internal citations and quotations omitted).

In opposition, Western Maryland press several meritless arguments. First, that Maryland law should apply instead of Illinois law, which had applied throughout arbitration. Opp'n at 4. This argument is irrelevant because Illinois law and Maryland law are essentially alike on this point. The similarity of the law on this point was conclusively presented in defendants' motion for summary judgment, which Mr. Buckel must surely have read prior to drafting his opposition to it. *See* Mot. for Summ. J. at 9 n. 4 & 12 n. 5. Moreover, plaintiff does not suggest any differences, relevant or otherwise, between the two states' laws that may benefit his client.

---

13. On May 16th, the defendants filed their motion for summary judgment. On May 30, Mr. Buckel filed an uncontested motion to extend his time to respond until June 18th. Mr. Buckel should have used this month to either seek leave to amend the complaint or voluntarily dismiss it.

Plaintiff next argues, without citing a single case in support, that a decision by an arbitrator is not a "judgment" for res judicata purposes under Illinois law or Maryland law. Again, defendants' motion extensively cites precedential Illinois (as well as Maryland and federal law) establishing beyond peradventure that "arbitration awards have the same res judicata and collateral estoppel effect as court judgments." *See* Mot. for Summ. J. at 12–13 & n. 5 (quoting *Peregrine Fin. Group, Inc. v. Martinez*, 305 Ill.App.3d 571, 238 Ill.Dec. 757, 712 N.E.2d 861, 867 (1999) and citing three other precedential, binding Illinois court decisions).

Plaintiff argues further that U.S. Cellular employees Catani and Zini are not in privity with their employer. Plaintiff does not cite a single case to support its position, nor does it make a single logical argument as to why employees would not be in privity with their employer, at least when the complaint alleges the identical claims decided at arbitration.

Next, to manufacture an issue on which plaintiff stakes its opposition, plaintiff misstates the standard for res judicata. In its section addressing res judicata, plaintiff cites the narrower standard for collateral estoppel: "[o]nly those issues that were actually litigated and determined in the first case are forever barred from being raised in subsequent proceedings." Opp'n at 6 (citing *Harding v. Ramsay, Scarlett & Co.*, 599 F.Supp. 180, 183 (D.Md.1984)). This misstatement of the law is sanctionable for two reasons.

First, *Harding* simply does not say that. *Harding* is a short, simple case and the law is set forth with complete clarity. *Harding* states:

To decide whether res judicata or collateral estoppel principles will bar litigation in federal court, the court must look to the law of the state in which the judgment was entered. In Maryland, res judicata bars litigation of another suit upon the same cause of action as to all matters which were, or could have been, litigated. Collateral estoppel applies in a second suit, even though the cause of action is different, to any determination of fact which was litigated in the first case.

*Id.* at 183 (internal citations omitted). Because Mr. Buckel had no nonfrivolous basis to contest dismissal on res judicata grounds, he appears to have misstated the legal standard to manufacture an issue.

Second, Western Maryland's manufactured issue is meritless because, as demonstrated above, its claims are barred by collateral estoppel, as well as res judicata and arbitration and award. The two ·specific claims plaintiff presses in its opposition, improper favoritism towards G & S Wireless and U.S. Cellular's tortious interference with Western Maryland's business interests and its leases, were expressly and definitively litigated during the arbitration and actually decided by the arbitrator. Mr. Buckel might be excused on this point because he did not represent Western Maryland at arbitration. But had Mr. Buckel conducted even a cursory review of the defendants' initial motion for summary judgment and its sixteen exhibits (which contained most of the record of arbitration) prior to drafting his opposition, he would have seen that these issues were fully litigated at arbitration. *See* Mot. for Summ. J. at 11; O'Brien Decl. Ex. 2–3.

Perhaps predicting that Western Maryland would stake its opposition on the improper favoritism and tortious interference claims, the defendants' motion for summary judgment used an entire page to detail how these specific claims were litigated and decided at arbitration. Defendants' extensive citation to the arbitration record appended as exhibits makes this fact indisputable without the need for any

further inquiry. Accordingly, sanctions are warranted under Rule 11(b)(2) because Western Maryland's counsel had no objectively reasonable basis on which to oppose summary judgment.

 The opposition is also sanctionable under Rule 11(b)(3) for misrepresenting material facts. Rule 11(b)(3) authorizes sanctions for filings that contain "allegations based on information which minimal factual inquiry would disprove," *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410–411 (4th Cir.1999) (internal quotations and citations omitted) or when an attorney knows that a position is unsupported by fact, *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 542–43 (4th Cir.1990). "Factual allegations fail to satisfy Rule 11(b)(3) when they are unsupported by any information obtained prior to filing." *Morris v. Wachovia Securities, Inc.*, 448 F.3d 268, 277 (4th Cir.2006).

After conceding that most of its claims are barred, *see* note 8 *supra,* plaintiff argues that some issues were not addressed at arbitration, namely the improper favoritism and tortious interference claims.[14] As explained above, Western Maryland and its counsel had the record of arbitration and the defendants' motion and its sixteen exhibits. Ample evidence existed in the record from defendants' initial motion and exhibits to dispute any claim that any issues alleged in plaintiff's complaint were not comprehensively addressed at arbitration. Defendants' reply added further evidence against plaintiff's two specific issues by offering as exhibits Western Maryland's pre- and post-hearing briefs and more transcript testimony on point. *See* O'Brien Supp. Ex. 17 & 18.

Plaintiff's counsel, Mr. Buckel, had three weeks with which to review this reply, reread defendants' initial motion and exhibits, and respond to the pending Rule 11 motion or retract his opposition. Mr. Buckel did not and he has not communicated with the Court in any manner, even when ordered to do so. Therefore, for failure to make any factual inquiry and for filing and failing to retract a filing that is wholly unsupported by fact, Rule 11(b)(3) sanctions are also appropriate.

## IV. Conclusion

In accordance with the Order of even date, the Court GRANTS defendants' motion for summary judgment and GRANTS defendants' motion for Rule 11 sanctions against Mr. Buckel and his client.

The amount of the sanction must still be determined. Within ten days, defendants' counsel will submit to the Court, and serve on Mr. Buckel, a detailed accounting of its fees and costs incurred in connection with the motion for summary judgment and the Rule 11 motion. Upon receipt of defendants' accounting, Western Maryland and Mr. Buckel will have ten days to submit a response. The response may contest the amount of the sanction and inform the Court whether it should hold a hearing or determine the amount of the sanction based on the papers.

---

**14.** Plaintiff cites "broader themes sounded in the instant complaint, either expressly or implicitly ... [that] appear not to have been expressly presented as counterclaims nor decided in the prior arbitration." Opp'n at 5.